[Cite as *State v. Austin*, 2010-Ohio-6583.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                    )
                                  )    CASE NO.    09 MA 167
    PLAINTIFF-APPELLEE,       )
                                  )
    - VS -                    )    O P I N I O N
                                  )
DANIEL AUSTIN,                    )
                                  )
    DEFENDANT-APPELLANT.      )


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                   Court, Case No. 09CR754.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Paul Gains
                                   Prosecuting Attorney
                                   Attorney Ralph Rivera
                                   Assistant Prosecuting Attorney
                                   21 West Boardman Street, 6th Floor
                                   Youngstown, Ohio  44503

For Defendant-Appellant:           Attorney J. Dean Carro
                                   University of Akron School of Law
                                   Office of Appellate Review
                                   Akron, Ohio  44325-2901


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                   Dated:  December 30, 2010

VUKOVICH, P.J.

¶{1} Defendant-appellant Daniel Austin appeals from his convictions and sentences rendered in the Mahoning County Common Pleas Court for kidnapping with a repeat violent offender specification, and aggravated burglary with a repeat violent offender specification.

¶{2} Austin argues in his first assignment of error that when the trial court sentenced him to maximum, consecutive sentences for the convictions, it impermissibly engaged in judicial fact-finding by finding that the victim suffered serious psychological injury as a result of the offenses. He contends that since the offenses he was found guilty of do not contain the element of serious psychological injury, the trial court could not rely on that factor when it ordered maximum, consecutive sentences. His argument is based on the United States Supreme Court's decision in *Blakely v. Washington* (2004), 542 U.S. 296 and the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

¶{3} In his second assignment of error, he argues that the trial court erred when it failed to hold a mandatory competency hearing after defense counsel, prior to trial, raised the issue of Austin's competency. The state counters the above argument by contending that the trial court did hold a hearing immediately following the motion. Alternatively, the state argues that even if the court failed to hold a hearing, that failure amounted to harmless error.

¶{4} We find no merit with either assignment of error. The trial court did not engage in impermissible fact-finding when it considered a factor in R.C. 2929.12 that was not an element of the convicted offenses. Moreover, even if it did, other statements made by the trial court support the maximum consecutive sentences. Additionally, we find that the trial court did not violate Austin's right to a mandatory competency hearing. For the reasons stated below, the judgment of the trial court is hereby affirmed.

<u>STATEMENT OF FACTS AND CASE</u>

¶{5} The Mahoning County Grand Jury indicted Austin on one count of kidnapping, a violation of R.C. 2905.01(B)(2), a first degree felony; one count of

aggravated burglary, a violation of R.C. 2911.11(A)(1), a first degree felony; one count of felonious assault, a violation of R.C. 2903.11(A)(2)(D), a second degree felony; and one count of attempted murder, a violation of R.C. 2903.01(B) and R.C. 2923.02(A), a first degree felony. Each charge contained a repeat violent offender specification as enumerated in R.C. 2941.149(A).

¶{6} The indictment was the result of the alleged actions taken by Austin on or about May 19, 2009. It is purported that he broke into Carolyn Wright's home, choked her and struck her in the forehead with the handle of a knife. 09/21/09 Trial Tr. 243-247. At that point, Wright lost consciousness and when she awoke her hands and feet were tied together, and she was in a large plastic storage container in her utility room. 09/21/09 Trial Tr. 243, 248-250. She called out to Austin that she had to use the bathroom, he untied her, and she ran next door to call 911. 09/21/09 Trial Tr. 252, 254. Austin pled not guilty to the charges.

¶{7} Days before going to trial, at a pretrial hearing, Austin's attorney orally moved to withdraw as counsel and also moved to have Austin's competency evaluated. 09/18/09 Pretrial Tr. 4-7. Counsel's motion was based on Austin's dissatisfaction with counsel's representation and Austin's stated belief that counsel, the prosecutor, the trial judge, and counsel who represented him in 1981 on a murder charge were in a giant conspiracy against Austin. The court allowed Austin to speak before it rendered its determination on the motions. Austin stated that he thought his attorney could prove the case and he was ready to go to trial. 09/18/09 Pretrial Tr. 8. Austin made no statements about the alleged conspiracy against him. The trial court then denied counsel's motion to withdraw. It did not render a ruling on the competency motion.

¶{8} On the day of trial, minutes before voir dire began, counsel renewed his motion for a competency evaluation. 09/21/09 Trial Tr. 12. The court denied the motion with three pages of reasoning that focused on its own observations of Austin. 09/21/09 Tr. 13-15.

¶{9} The case then proceeded to trial. The jury found Austin guilty of kidnapping, aggravated burglary, and both of the serious offender specifications attached to those offenses; Austin was found not guilty of felonious assault and

attempted murder.  The case then proceeded to sentencing.  The trial court sentenced Austin to an aggregate sentence of 40 years.  He received the maximum for each crime, which was 10 years, and those sentences were ordered to be served consecutive to each other.

<u>FIRST ASSIGNMENT OF ERROR</u>

¶{10}  "THE TRIAL COURT ERRED WHEN IT MADE A FINDING OF FACT AT SENTENCING AND RELIED ON THE FINDING OF SERIOUS PSYCHOLOGICAL INJURY, A FACT NOT FOUND BY THE JURY, THEREBY VIOLATING APPELLANT AUSTIN'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL.  (SENT. TRANSCRIPT, 28)."

¶{11}  Felony sentences are reviewed using both the clearly and convincingly contrary to law and abuse of discretion standards of review.  *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912.  See, also, *State v. Gratz,* 7th Dist. No. 08MA101, 2009-Ohio-695, ¶8.  A sentence is clearly and convincingly contrary to law when the sentencing court does not comply with all applicable rules and statutes in imposing the sentence.  *Gratz,* supra, at ¶8, citing *Kalish,* supra, ¶13-14.  An abuse of discretion can be found if the sentencing court unreasonably or arbitrarily weighs the factors in R.C. 2929.11 and R.C. 2929.12. *Gratz,* supra, at ¶8, citing *Kalish,* supra, at ¶17.

¶{12}  During sentencing when considering R.C. 2929.12(B)'s factors that indicate that the offender's conduct is more serious than conduct normally constituting the offense, it stated that the victim suffered serious psychological harm.  The court used that factor in ordering the maximum, consecutive sentences.

¶{13}  The Ohio Supreme Court has held that R.C. 2929.14(B), (C), and (E) are unconstitutional because they require judicial fact-finding.  *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one and three of the syllabus.  Those statutes mandated a sentencing court to make certain findings, which were not proven to the jury, prior to issuing maximum and/or consecutive sentences.  Id. at ¶83.  However, as to R.C. 2929.12, the Court has indicated that it does not mandate judicial fact-finding, but rather only requires the court to "consider" the statutory factors.  *Id.* at, ¶42; *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, ¶38.  See, also, *State v. Jones*, 7th Dist.

Nos. 08JE20 and 08JE29, 2010-Ohio-2704, ¶20, citing *State v. Simmons*, 7th Dist. No. 07JE22, 2008-Ohio-3337, at ¶11-14.

¶{14} Previously, when reviewing *Foster* and its holding, we explained:

¶{15} "Simply put, *Foster* held that it was unconstitutional for the Ohio General Assembly to mandate that a trial court find a particular fact before imposing a particular sentence. Furthermore, the decision explicitly stated that trial courts would have to engage in fact-finding when sentencing felony offenders in the future." *State v. Stroud*, 7th Dist. No. 07MA91, 2008-Ohio-3187, ¶8. See, also, *Simmons*, 7th Dist. No. 07JE22, 2008-Ohio-3337, ¶11-14 (it is statutorily-required specific judicial fact-finding that is prohibited, not the discretionary expression of the existence of various sentencing considerations).

¶{16} In reaching our holding, we noted "that the United States Supreme Court [in *Blakey*] was careful to clarify that a defendant's right to a jury trial is not violated when a judge finds facts when determining an appropriate sentence." *Stroud*, supra, at ¶11, citing *Blakely*, supra, at 308-309. Rather, the right to a jury trial was violated when a trial court finds "facts mandated by statute when determining an appropriate sentence." Id., citing *Blakely*, supra, at 308-309.

¶{17} Austin finds fault with our decision in *Stroud* by reasoning that while our holding is not directly contradictory to the Ohio Supreme Court's language in *Foster*, it does not conform to the U.S. Supreme Court's reasoning in *Blakely*. It is his position that a court can only "consider" a factor in R.C. 2929.12 if it is an element of the offense.

¶{18} Reviewing our decision in *Stroud*, we find that it does not violate *Foster*, *Blakely*, or the spirit of those decisions. Furthermore, we find that the Ohio Supreme Court's indication that courts shall "consider" the factors in R.C. 2929.12, does not mean that courts are only permitted to "consider" those factors if they are an element of the convicted offense. To find otherwise is illogical. To consider something is to take it into account. www.merriam-webster.com/dictionary/consider. Thus, by definition, the trial court was permitted to take any factor that could be derived from the facts presented at trial into account when determining the appropriate sentence. As

we have recently stated, "A sentencing court is permitted to express its impressions derived from trial." *Jones*, supra, at ¶20.

¶{19} To hold otherwise would raise questions about the applicability and purpose of R.C. 2929.12. If a factor can be considered by the trial court, but cannot be used in determining the appropriate sentencing unless that factor is an element of the offense, what is the use of R.C. 2929.12 in setting forth factors for the court to consider? Likewise, logically how does a trial court exercise its discretion in that instance? While the jury's function in a criminal trial is immensely important, it is not the jury's function to sentence the offender. Rather, that duty is the sole responsibility of the sentencing judge. The Ohio Supreme Court has clearly indicated that trial judges have discretion in sentencing. The judges have this discretion because they are in the best position to give a sentence that is commensurate with the offense committed. Sentencing courts see a vast array of offenses, criminals and factual scenarios involving the crimes committed. This knowledge should be used in determining the appropriate sentence to impose on an offender given all the facts presented.

¶{20} We note that Austin does attempt to cite cases from this district and other appellate districts that he contends support his position that when the trial court made the finding that there was serious psychological harm, it was engaged in improper judicial fact-finding. However, we do not find that those cases clearly support that conclusion. None of those cases deal with the specific situation where the trial court considered and found a factor under R.C. 2929.12 and the appellate court, in reviewing the trial court's application of that factor, found the trial court engaged in impermissible judicial fact-finding. For instance in *State v. Moore*, 7th Dist. No. 05MA178, 2007-Ohio-7215, we did not hold that appellant was successful in his argument that the trial court violated *Foster* by considering "the psychological harm suffered by the victim"; i.e. we did not find that using the factors in R.C. 2929.12 was impermissible judicial fact-finding. Rather, our holding was when the trial court made findings under R.C. 2929.14(B), (C), and (E), which were deemed unconstitutional under *Foster* for issuing a maximum consecutive sentence, it engaged in impermissible judicial fact-finding.

¶{21} Consequently, we find that this assignment of error lacks merit. When the trial court considered the serious psychological harm factor in R.C. 2929.12(B)(2) it was not engaging in impermissible judicial fact-finding.

¶{22} Assuming for the sake of argument that the trial court impermissibly engaged in impermissible judicial fact-finding, this assignment of error still lacks merit because even if the alleged impermissible factor is not considered, the sentence still was not contrary to law or an abuse of discretion. In sentencing Austin, the trial court complied with all applicable sentencing statutes, i.e. R.C. 2929.14; R.C. 2929.11 and R.C. 2929.12. The sentence imposed fell within the applicable range under R.C. 2929.14. R.C. 2929.14(A)(1) (maximum sentence for first degree felony is ten years); R.C. 2929.14(D)(2)(a) (maximum sentence for serious offender specification in R.C. 2929.149 is ten years). The trial court also clearly indicated that it considered the purposes and principles of sentencing under R.C. 2929.11. Additionally, it considered seriousness and recidivism factors under R.C. 2929.12.

¶{23} In his brief, the only seriousness and recidivism factor that Austin complains of is the serious psychological harm finding. The trial court, however, did not rely solely on that factor in ordering the sentence. It considered R.C. 2929.12(B)(6) that the relationship between the offender and victim facilitated the offense. It also found that Austin previously had not responded favorably to sanctions and that he showed no remorse for the crime and recidivism was more likely. R.C. 2929.12(D)(3), (5); 09/28/09 Sentencing Tr. 30. Consequently, as these findings justify a maximum, consecutive sentence, we cannot find plain error; the sentence would have been the same even if the trial court did not find serious psychological harm.

SECOND ASSIGNMENT OF ERROR

¶{24} "THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A MANDATORY COMPETENCY HEARING AFTER DEFENSE COUNSEL RAISED THE ISSUE BEFORE TRIAL THEREBY VIOLATING R.C. 2945.37 AND APPELLANT AUSTIN'S DUE PROCESS RIGHTS TO A FAIR TRIAL. (PRETRIAL TRANSCRIPT, 6; TR., COL. I, P. 12)."

¶{25} Fundamental principles of due process prohibit a trial of a criminal defendant who is legally incompetent. *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶114. "Incompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶47, quoting *State v. Bock* (1986), 28 Ohio St.3d 108, 110.

¶{26} R.C. 2945.37(B) provides that when the defendant's competency to stand trial is raised prior to the commencement of trial, the court is required to hold a hearing. If the request is made after trial begins then a competency hearing is warranted only for good cause or on the court's own motion. R.C. 2945.37(B). Section (C) provides that the court must conduct a hearing within thirty days after the issue is raised, unless the defendant has been referred for evaluation. If the defendant has been referred for evaluation, the hearing is to be conducted within ten days after the filing of the report. R.C 2945.37(C). The defendant must be represented by counsel at the hearing. R.C. 2945.37(D). Both the prosecutor and defense counsel are permitted to submit evidence on the issue of the defendant's competence to stand trial. R.C. 2945.37(E). The statute provides that a defendant is presumed to be competent to stand trial. In order to be deemed incompetent, the court must find by a preponderance of the evidence that "because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense." R.C. 2945.37(G).

¶{27} Austin, through counsel, made two oral motions for a competency evaluation pursuant to R.C. 2945.37. The first one was raised approximately four days prior to trial at the September 18, 2009 pretrial. The second one was raised minutes prior to voir dire of the September 21, 2009. Both requests were based on conversations counsel had with Austin in which Austin allegedly informed counsel that counsel, the trial court, and his defense attorney from his 1981 murder conviction were involved in a conspiracy to get him. Counsel also indicated that the request was also

based on the fact that Austin had continuously gone against his recommendations and that, in counsel's opinion, did not show a level of competency. 09/21/09 Trial Tr. 12.

¶{28} As both requests were raised prior to trial, the trial court was required to hold a hearing. *State v. Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, ¶5, 30 (competency request right before voir dire was deemed to be prior to trial and required the court to hold competency hearing). Austin was not referred for evaluation after either of the requests. Thus, by statute, the competency hearing was required to be held within thirty days of the motion.

¶{29} Following the second request, the trial court found Austin competent and provided the following reasoning for doing so:

¶{30} "THE COURT: Well, the court has to make a determination in that regard, and there are two elements to competency to stand trial, one of which is the defendant's present ability to understand the nature and objective of the proceedings against him. The other is his ability to participate meaningfully in his defense. I'm a great believer in the word of the lawyer being taken with great influence in the issue of competency. In fact, I once testified for a client of mine before Judge Bannon that there was an absolute inability of my client to counsel with me, that she was incoherent, that she was incapable of helping me, understating me, participating with me, and she just brushed that off like it was nothing. And maybe that's because of his observations of the defendant himself. I don't think that's what it was. But when I do tell you that I think what you have to say means a lot, it does mean a lot to me. It is something where that's a tough position to be in if you're trying a case and your client won't cooperate with you. Whether that makes him incompetent, of course, is where the court kind of has to weigh in on that. And my weighing in on that is to observe Mr. Austin, to listen to what he's had to say. His position in this case is not at all unusual. There are a great number of criminal defendants who think that it is inconvenient to the court to try a case, that waiver is evil no matter what it's for, that they want 12 in the box, and let them come get me if they want me. And I don't say that – I say that there are some defendants who do that, but the vast majority of defendants listen to what their lawyers say, try to evaluate what makes sense and what doesn't make sense and instead of a they got to get me type of an attitude is, well, maybe there's enough

evidence here that I should consider what's best for me and for my future rather than casting my fate to the wind. Well, from observation of your client throughout the proceedings that we've had, and they've been extensive, he is not someone who appears incompetent to me; someone who simply says that I'm not going your way no matter what. And he certainly is not the first person I've ever met that way. Although I personally don't agree with that and don't understand that, I do understand that he has that right, and I'll honor that. I'll respect that.

¶{31} "THE DEFENDANT: Thank you.

¶{32} "THE COURT: So we're going to go to trial, and whatever may be will be. The only thing that I can guarantee you is that I'll make sure the defendant's constitutional and statutory rights are protected throughout the trial. So your application to have his competency evaluated is denied." 09/21/09 Trial Tr. 12-15.

¶{33} We find that what occurred prior to trial after the request for a competency hearing was in fact a competency hearing. There was a finding of competency. Austin was represented. It does not appear from the record that the trial court prevented any evidence or argument concerning competency. The hearing occurred within thirty days of the request. Thus, the hearing meet the statutory mandates.

¶{34} Furthermore, we find that the competency hearing can occur immediately after the request has been made. Austin contends that the thirty day time limit in the statute "suggests that the General Assembly intended the competency hearing to be conducted in a later, separate hearing, not on the spot." However, unless the statute is ambiguous, the intent of the general assembly is not at issue. *Sherwin-Williams Co. v. Dayton Freight Lines, Inc.*, 112 Ohio St.3d 52, 2006-Ohio-6498, ¶15, quoting *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶13. Here, there is no claim of ambiguity and a reading of the statute indicates that it is not ambiguous. The time limit as it is written in the statute, is to prevent a hearing past the thirty day limit. There is nothing in the statute which could be read to indicate that if a competency hearing is requested, that hearing cannot occur on the same day as the request. If the general assembly had intended for the competency hearing to occur at a separate time, it could have provided language in the statute to indicate as such. Since it did not, we

will not read such limiting language into the statute. See *Al Minor & Assoc., Inc. v. Martin*, 117 Ohio St.3d 58, 2008-Ohio-292, ¶18 (stating that courts are not permitted to read language into the statute which is not there).

¶{35} Consequently, for all the above reasons, we find that a competency hearing was held and Austin's due process rights were not violated. As an alternative ground, we conclude that even if the trial court did not have a proper competency hearing, that error does not amount to reversible error under the facts and circumstances of this case..

¶{36} It has been held that when a request for a competency evaluation is made prior to trial, the failure to hold the competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence. *Bock*, 28 Ohio St.3d at 110. See, also, *State v. Almashni*, 8th Dist. No. 92237, 2010-Ohio-898, ¶13-14; *Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, at ¶29. In holding as such, the Ohio Supreme Court in *Bock* relied on the fact that the defendant participated in the trial, testified, and was subject to cross-examination, and that defense counsel, after the original motion for a hearing, failed to ever again mention the defendant's competency until the time for appeal. Following *Bock*, the Ohio Supreme Court re-explained its holding and under a different set of facts found that the record revealed sufficient indicia of incompetence that required a competency hearing. *Were*, 94 Ohio St.3d at 176. In *Were*, counsel continually raised the issue of appellant's competency, appellant did not testify at trial and appellant's unsworn statement offered during mitigation was not subject to cross-examination. Id. The Court further provided:

¶{37} "Nor can it be said that the record here lacks sufficient indicia of appellant's incompetency. In addition to defense counsel's repeated allegations, the many *pro se* motions filed by appellant clearly cast doubt on appellant's competency." Id.

¶{38} The Twelfth Appellate District in *Murphy* relied on *Bock* for finding the record did not reveal sufficient indicia of incompetence. *Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, at ¶34-36. The court noted that unlike *Bock, Murphy* did not testify. Id. at ¶35. However, it stated that appellant extensively and coherently discussed issues and options on the record and made choices on those options both

before and after his outburst and he presented closing arguments on his own behalf. Id.

¶{39} Here, Austin did not testify, but there are other discussions on the record which do not reveal sufficient indicia of incompetence. At the September 19, 2009 pretrial after defense counsel argued his motion to withdraw as counsel and motion for a competency evaluation, the trial court allowed Austin to speak. He stated:

¶{40} "THE DEFENDANT: I think my attorney can prove my case in the courtroom. I'm taking the transcript of the other courtroom, we can go to trial Monday. Paul Conn [defense counsel] can prove the case. Inconsistency can – I don't need no witness; I don't even need an alibi. We can go to trial. Let's get it over with. This case is ready to be tried. Don't waste the taxpayers' money or leave me in the county jail 6 – 8 years and stuff –

¶{41} "* * *

¶{42} "THE COURT: Okay. So you're okay with Mr. Conn?

¶{43} "THE DEFENDANT: Yeah, he won the case in county courtroom. I'm going with the evidence he did in county courtroom with the state witnesses.

¶{44} "THE COURT: All right.

¶{45} "THE DEFENDANT: We got a trial, you said, Monday. You ain't playing around. Let's go to trial." 09/18/09 Pretrial Tr. 8-9.

¶{46} Furthermore, prior to the renewal of defense counsel's motion for a competency evaluation, counsel indicated that Austin was waiving his right to a jury trial on the serious offender specifications. With the waiver of the jury trial on the serious offender specification, the jury would hear that Austin was convicted in 1981 for murder. When the court attempted to have Austin sign the waiver, Austin refused. 09/21/09 Trial Tr. 4-7. A colloquy occurred between the court and Austin in which they discussed Austin's refusal to waive the right to a jury on those specifications:

¶{47} "THE DEFENDANT: I don't want to waive the right. I want the jury to see their case. I ain't waiving nothing. I ain't got nothing to hide. I ain't waiving nothing. They can see their case.

¶{48} "THE COURT: Okay. So you're not waiving the right to jury trial on this repeat violent offender specification?

¶{49} "THE DEFENDANT: No. No.

¶{50} "THE COURT: Because you don't want to waive anything.

¶{51} "THE DEFENDANT: No.

¶{52} "THE COURT: You didn't want to waive your right to speedy trial –

¶{53} "THE DEFENDANT: No.

¶{54} "THE COURT: – and you don't want to waive your right to a jury trial on this repeat violent offender spec that's attached to each of the charges against you.

¶{55} "THE DEFENDANT: Yes, I know, Your Honor.

¶{56} "THE COURT: Is that right?

¶{57} "THE DEFENDANT: Yeah, I read it in my indictment. I want a jury to hear everything in my past and present because most of the shit end up against me is – I ain't never killed no one. I ain't never going to admit to killing anyone and I went to prison for it. Twenty-nine years later I'm standing in front of you still on the same thing and this is a courtroom –

¶{58} "THE COURT: Okay. Well, we're not trying that. We're simply informing the jury if you don't waive your right to a jury trial on those specifications, then all the state's going to do is bring in a certified copy of the record that you were convicted and the jury will know you were convicted of the murder.

¶{59} "THE DEFENDANT: Yes.

¶{60} "THE COURT: You're not going to get to try that again. You're not going to get up in front of the jury and explain what happened. That's not what that's about. Do you understand?

¶{61} "THE DEFENDANT: The prosecutor going to ask me questions about it? I got to explain when he asks me questions about the case?

¶{62} "THE COURT: The prosecutor's not going to call you to witness stand. He can't do that.

¶{63} "THE DEFENDANT: Oh, okay.

¶{64} "THE COURT: I doubt that he's going to ask you anything about it if you do take the witness stand because he's not allowed to do that. He's allowed to produce for the jury the fact that you were convicted of that offense previously. That's

it, not a discussion about what the case was about or whether you think you're guilty or not guilty or what happened. It's about whether or not you were convicted.

¶{65} "THE DEFENDANT: I'm trying to be careful, Judge. I know last time in 2005 the jury heard the case. My last jury heard the case. I just want to stay on that same route that I did the last time I stood in front of you. The prosecutor brought me up. They talk about the homicide. They heard it. They went to the jury room and all that. So let's keep it on the same basis. I ain't hiding nothing. You gave me one year. I'm getting old. I'm expecting – I ain't trying to go to the penitentiary. I've been out here almost ten years; did five years on paper. Anytime a woman thinks she can file something on me and go down there, nobody going to take my side, they taking me to trial." 09/21/09 Trial Tr. 7-10.

¶{66} In addition, after the issue of competency was resolved by the court, defense counsel again moved to withdraw as counsel, during that discussion, the following colloquy occurred:

¶{67} "MR. CONN: Are you satisfied with my services or not, Daniel? Would you prefer another attorney? This is important.

¶{68} "THE DEFENDANT: Man, you going to keep bouncing me back up in this courtroom in front of the judge making me look bad like I'm incompetent. You been trying to play like I'm insane. There ain't nothing wrong with me. I'm going to convince the judge because I'm actually the one going to prison." 09/21/09 Trial Tr. 19.

¶{69} All the above appears to show that Austin was capable of understanding the nature and objective of the proceedings against him. Furthermore, it appears he took an active role in deciding issues, i.e. assisting in his defense, such as whether to accept the state's plea offer, to waive his right to a jury trial on the repeat serious offender specification, and to testify on his own behalf. The transcripts are replete with instances where counsel and Austin disagreed. For instance, they disagreed over whether Austin should accept the plea offer and whether Austin should waive his right to jury trial on the serious offender specifications. The fact that Austin in most instances disagreed and did not follow his attorney's advice does not show that he was incapable of assisting in his defense. Disagreements alone do not show

incompetence or an inability to assist in the defense. Likewise, the failure to follow counsel's advice when there is an indication that he understood what was going on also does not show legal incompetence. It is clear from reading the transcripts in this case that Austin was found not guilty in a 2005 case and his reason for not wanting to waive or plead was because he wanted to follow the same path he had chosen to take in the 2005 trial.

¶{70} Admittedly, the motion for a competency evaluation was also based on Austin's belief that there was a conspiracy against him. At sentencing, Austin explained that his feeling was derived from his 1981 conviction for murder. He stated that judges on the bench at that time were corrupt and he did not commit the murder. He seems to be arguing that the corruption that occurred in the 1981 case extended to this case in a conspiracy to keep him quiet about the prior corruption. 09/28/09 Sentencing Tr. 16-19. Even assuming Austin's behavior was indicative of paranoia, paranoia does not necessarily constitute an incompetence to stand trial when, as here, there is abundant information in the transcript that Austin understood the nature and objective of the proceedings and assisted in his defense by making his own choices even though they were made most of the time against the advice of counsel. See *Cowans v. Bagley* (S.D.Ohio 2008), 624 F.Supp.2d 709, 754.

¶{71} Thus, even if the trial court erred in failing to hold a competency hearing, that error was harmless. This assignment of error lacks merit.

CONCLUSION

¶{72} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.