[Cite as *State v. Thomas*, 2019-Ohio-132.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170400 |
| | | TRIAL NO. B-1506725 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| HAROLD DUANE THOMAS, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: January 18, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**CUNNINGHAM, Judge.**

{¶1}    Defendant Harold Duane Thomas was convicted of drug offenses and having weapons under disability after representing himself at a jury trial, during which he advanced a "sovereign citizen" defense.  On appeal, Thomas contends the trial court erred by failing to sua sponte order a competency evaluation before allowing him to waive his right to counsel.  He also faults the court for admitting evidence of a prior drug conviction, for failing to liberally construe his written and oral motions as motions for assistance in subpoenaing the state's nontestifying confidential informant, and for failing to merge his drug-trafficking and possession offenses.

{¶2}    We conclude that the trial court erred by failing to merge the possession offense into the trafficking offense, but that Thomas's other arguments alleging reversible error lack merit.

## I.  Background Facts and Procedure

{¶3}    In late November of 2015, Cincinnati Police Sergeant Ryan Hudson received a phone call from a law enforcement officer in Kansas that led to a controlled delivery of marijuana to Thomas's residence in Cincinnati.  Before the delivery, the police recorded a phone call between Thomas and his associate "Sergio," who was cooperating with the police as an informant.  Thomas's statements during the call demonstrated he was expecting a delivery of drugs and had made some preliminary arrangements for the distribution of drugs.  Officers performing surveillance on Thomas's residence observed Sergio arrive at the house in a minivan, followed by Sergio's and Thomas's removal of the cellophane-wrapped bundles of marijuana from the back of the minivan into Thomas's garage.  Thomas then left the residence in a vehicle and was apprehended and taken into custody a short time later.  During a search

of the residence, the police found over 40,000 grams of marijuana in Thomas's garage and an operable .25-caliber firearm in the dining room, along with around $2000 in cash. Additionally, they recovered personal papers belonging to Thomas and several ledgers containing notations known by narcotics officers to be slang for drug-trafficking terms.

{¶4} In his police interview with Police Officer Matthew Waters after his arrest, Thomas indicated that he resided at the residence with his girlfriend and Sergio Gonzales. He said that he had sold marijuana in the past, and admitted that he had helped Sergio unload the marijuana into his garage. He first told the police that Sergio had found the marijuana on the side of the road, but then claimed that Sergio had taken the marijuana from another drug dealer who had been arrested by the police. Finally, Thomas predicted that the police would find a .25-caliber pistol in the house.

{¶5} As a result of the investigation, Thomas was charged with one count of trafficking marijuana in violation of R.C. 2925.03(A)(2), one count of possession of marijuana in violation of R.C. 2925.11(A), and one count of having weapons under a disability in violation of R.C. 2923.13(A)(3). Thomas's 1988 federal conviction for the distribution of cocaine created the disability for the weapons offense.

{¶6} Thomas was initially represented by appointed counsel, who filed a variety of pretrial motions on Thomas's behalf. But counsel reported to the court that he had had a "long conversation" with Thomas about the case and that they did not see "eye-to-eye" on how to proceed. Thomas thought the state's plea offer was inadequate, and he wished to proceed without the assistance of counsel, as "pro-per" or "propria-persona," and to pursue in part a strategy promoting a "sovereign citizen" or "flesh and blood" defense. This sovereign-citizen defense is marked by nonsensical claims challenging the trial court's jurisdiction and "theorizing that [American] citizenship is

grounded in a contract between each citizen and the federal government-a contract that may be canceled by renouncing citizenship." Evans, *The Flesh & Blood Defense*, 53 Wm. & Mary L.Rev. 1361, 1371 (2012). As explained by Thomas, "[e]ach of us has two pro personas. We have our human side and the created side. * * * Joseph John Smith, lower case, is a natural flesh and blood human created by God. John Joseph [sic] Smith, all caps, commercial, commerce is a U.S. Corporation, artificial purpose, U.S. citizen created by the government."

{¶7} Thomas also sought to disqualify the judge originally assigned to his case, claiming bias. That judge accepted Thomas's oral waiver of counsel, but continued the case and later recused. The new trial judge assigned to the case accepted Thomas's written waiver of counsel. The new judge also denied Thomas's sovereign-citizen-based motion to dismiss.

{¶8} In addition to filing multiple pretrial motions, Thomas subpoenaed multiple witnesses for trial. One witness was an expert that the court had afforded to Thomas to independently analyze the leafy substance recovered by the police in Thomas's garage.

{¶9} At trial, the state presented its evidence demonstrating Thomas's guilt. This included the recorded call between Thomas and Sergio, the surveillance video of the delivery of the marijuana to Thomas's residence, and the testimony from the police officers who had observed Thomas's conduct. Thomas cross-examined those witnesses, presented objections to their testimony, and recalled to the stand Officer Steve Batsch, who had testified for the state about the investigation of Thomas's drug-trafficking activities. Thomas's questions of Officer Batsch were aimed at casting doubt on the police's reliance on Sergio as an informant and the state's theory that some of the evidence that the police had recovered from Thomas's residence, such as ledgers, had

been used by Thomas in a drug-trafficking operation. Thomas did not call any other witnesses, including the expert he had subpoenaed.

{¶10} During closing argument, Thomas argued the evidence showed only that he was running a legitimate business and the marijuana recovered belonged to Sergio. He also presented an argument in support of his sovereign-citizen-based defense, which he had introduced to the jury during his opening statement.

{¶11} Ultimately, the jury found Thomas guilty of the three offenses with which he had been charged. The trial court then sentenced Thomas to eight years in prison for both the trafficking and possession offenses, to be served concurrently, and to 30 months in prison for the disability offense, to be served concurrently to the other terms.

## II. Analysis

{¶12} In his first assignment of error, Thomas contends the trial court erred by failing to sua sponte order a competency evaluation before allowing the waiver of trial counsel. To be valid, a waiver of counsel must be knowingly, intelligently, and voluntarily entered. *See Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Under *Faretta*, the trial court must engage the defendant in a rigorous colloquy to determine the validity of the waiver. *See Gibson* at paragraphs one and two of the syllabus.

{¶13} Thomas challenges only the intelligent nature of his waiver, claiming he lacked the competency for a valid waiver. "The competency that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez* at 399. The defendant must have the

5

" 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and ha[ve] a 'rational as well as factual understanding of the proceedings against him.' " *Id.* at 396, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). This is same standard for determining one's competency to stand trial. *Godinez* at 399.

{¶14} Evidence relevant to a competency inquiry includes the defendant's medical history, any connection between the defendant's serious mental disease or defect and some failure to understand the proceedings, assist in his own defense, or present his own defense, and the defendant's conduct in and out of court. *See United States v. Neal*, 776 F.3d 645, 655 (9th Cir.2015). *See also United States v. Miller*, 531 F.3d 340, 348 (6th Cir.2008), citing *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

{¶15} A defendant is presumed competent. *State v. Jordan*, 1010 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28-29. But when there is reasonable cause to doubt a defendant's competency to waive the right to counsel or to stand trial, the trial court must make a sufficient inquiry before proceeding in order to protect the defendant's due process right to a fair trial. *See Godinez; Unites States v. Coleman*, 871 F.3d 470, 475 (6th Cir.2017); *Neal* at 655; *Jordan* at ¶ 29; *State v. Were*, 94 Ohio St.3d 173, 761 N.E.2d 591 (2002), paragraph two of the syllabus. Here, there was no evidence that Thomas suffered from any serious mental disease or defect. Thomas claims, however, that his endorsement of the sovereign-citizen belief system was sufficient indicia of incompetency to require the court to sua sponte order a competency evaluation.

{¶16} We disagree that Thomas's endorsement of the sovereign-citizen belief system triggered the trial court's duty to sua sponte order a competency evaluation.

Surely Thomas espoused fringe views. But this alone did not mean Thomas could not cooperate with his lawyer or understand the judicial proceedings against him. Our prior decisions do not support such a rule.

{¶17} In *State v. Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, a case also involving a pro se defendant espousing a sovereign-citizen defense, we characterized the competency evaluation ordered by that trial court as one of the "extraordinary measures" the trial court took to ensure a valid waiver of counsel. *Id.* at ¶ 29. We did not suggest that the evaluation was required because of the defendant's fringe views.

{¶18} Likewise, in *State v. Robinson*, 1st Dist. Hamilton No. C-150346, 2016-Ohio-3330, we noted that the trial court had ordered a competency evaluation of a defendant, who had espoused a sovereign-citizen belief system, based on the defendant's behavior at his arraignment and his pro se filings. *Id.* at ¶ 20. But we did not indicate the evaluation was required based on the defendant's fringe views, and we upheld the trial court's determination that the defendant had validly waived counsel. *Id.* at ¶ 25.

{¶19} Other courts addressing this issue have similarly held that holding fringe views alone does not trigger the need for a competency evaluation. *Coleman*, 871 F.3d at 476, and authorities cited therein; *Neal*, 776 F.3d at 657. For instance, in *Neal*, the Ninth Circuit rejected the defendant's attempt to use his professed sovereign-citizen belief system "as an expression of incompetency" that alone created a genuine doubt concerning his competency and necessitated the court to sua sponte order a hearing on the issue before allowing the defendant to proceed pro se. *Neal* at 657. In this case, as in *Neal*, a competency evaluation was not necessary because the only evidence of incompetence was the unusual nature of Thomas's beliefs.

{¶20}    Thomas did not manifest any observable signs of incompetency during his proceedings such that a reasonable judge would experience genuine doubt about his competency.    He waived his right to counsel twice.    The trial court's inquiry at the second *Faretta* hearing was particularly comprehensive and exemplary.    The court questioned Thomas about whether he understood both factually and rationally the criminal proceedings against him, and whether he was making a knowing, intelligent, and voluntary choice in waiving his right to counsel.    Thomas indicated that he understood and wished to proceed without counsel, notwithstanding the court's repeated warnings related to the dangers and disadvantages of self-representation, and its clear notification that Thomas was facing a possible aggregate prison term of 11 years.

{¶21}    Certainly Thomas espoused his "sovereign citizen" rhetoric during that hearing, claiming that he was not subject to laws of Ohio or the rules of criminal procedure and evidence that the court made clear would apply.    But Thomas also repeatedly told the court that he "[was] aware" of his rights and "understood" the charges and potential penalties.    And he demanded that the court make available to him a copy of the Rules of Evidence and the Rules of Criminal Procedure.

{¶22}    The record further reflects that Thomas appreciated the criminal nature of the proceedings and that he was facing significant prison time if found guilty.    For instance, when the court told him that he was facing a mandatory eight-year prison term for the trafficking offense, Thomas indicated that he thought a range of two to eight years applied, based on his reading of the sentencing provisions, before telling the court, "Okay."    And Thomas repeatedly voiced his concern about going to prison for 11 years if he was convicted.

{¶23}    At the second *Faretta* hearing, the court also inquired of the prosecutor on the issue of Thomas's competency.    The prosecutor informed the court that his

interactions with Thomas had led him to believe that Thomas understood the charges against him and could assist in his own defense. The prosecutor reported that Thomas's competency had not been questioned in this case. This comment accurately reflected upon defense counsel's remarks at an appearance before the original judge that Thomas was not only capable of relating to him, but that he had had a lengthy discussion concerning trial strategy with counsel before counsel's dismissal.

{¶24} Similarly, the record does not include evidence suggesting Thomas's incompetency during the trial. Thomas participated effectively and with a fair degree of skill, including presenting relevant and meritorious objections and arguments. He disagreed with the applicable rules of procedure and evidence, but followed them. Finally, he was acutely aware that the proceedings were criminal in nature and not civil. He repeatedly voiced his concern over going to prison for 11 years, and even pleaded with the court not to impose any jail time on his daughter, who had been found in contempt of court during his trial.

{¶25} Ultimately, we conclude there was no reasonable cause for the trial court to believe that Thomas could not cooperate with an attorney, if he chose to do so, or understand the judicial proceedings against him. Consequently, we hold the trial court had no duty to sua sponte order a competency evaluation before accepting Thomas's waiver of counsel and allowing Thomas to proceed pro se at trial. Accordingly, we overrule the first assignment of error.

{¶26} In his second assignment of error, Thomas argues that the trial court erred by admitting testimony from Officer Waters about Thomas's statement in his police interview that he had previously served two years in prison in the 1980s for selling up to an ounce of marijuana. Thomas now contends the testimony improperly

referenced his prior drug conviction that served as the disability for the weapons-under-a-disability offense, which he had previously stipulated to for purposes of trial.

{¶27} Generally, the state is not permitted to adduce facts on the disability-creating prior conviction when the defendant has previously stipulated to having the disability. *See Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981. But the admission of the challenged testimony in this case did not implicate this rule because Officer Waters's testimony referenced a conviction involving the sale of marijuana, and not the distribution-of-cocaine conviction that served as the disability for the weapons offense.

{¶28} Thomas also argues that the testimony was other-acts evidence inadmissible under Evid.R. 404(B). Thomas did not raise an Evid.R. 404(B) objection in the trial court, and, accordingly, has forfeited all but plain error. Evid.R. 103(A)(1); Crim.R. 52(B). Additionally, Thomas solicited testimony from Officer Waters about his prior marijuana sales, thus contributing to any error. In light of the record, including the overwhelming evidence of guilt presented by the state, we hold that any error in the admission of Officer Waters's testimony briefly referencing Thomas's prior marijuana-sale conviction did not rise to the level of plain error. Accordingly, we overrule the second assignment of error.

{¶29} In his third assignment of error, Thomas argues the trial court violated his constitutional rights to a fair trial and compulsory process by failing to liberally construe his oral and written motions, including motions requesting discovery of Sergio's criminal record and statements, as motions "to have Sergio subject to compulsory process and brought to trial as a witness." The gist of his argument, as

clarified in his reply brief, is that the trial court should have helped him subpoena Sergio as a witness.

{¶30} The right to a fair and meaningful opportunity to defend includes the right to present witnesses. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). This includes the right to secure their attendance through compulsory process. *Id.* Here, the trial court sought to ensure these rights by repeatedly offering Thomas the assistance of a legal advisor to consult with Thomas on legal procedures, including the subpoenaing of witnesses. Thomas rejected this assistance because he did not need it, as reflected in the record showing that Thomas repeatedly subpoenaed witnesses other than Sergio.

{¶31} The record further demonstrates that Sergio's identity was known to Thomas and that his testimony would have inculpated Thomas. We can only surmise from this record that Thomas sought the discovery of impeaching information because he wished to diminish the persuasiveness of the state's evidence against him by impeaching Sergio without calling Sergio to testify.

{¶32} Thus, we hold that the trial court did not deprive Thomas of a fair trial and his right to compulsory process when it failed to construe his motions as motions to compel the attendance of Sergio. Accordingly, we overrule the third assignment of error.

{¶33} In his fourth assignment of error, Thomas argues the trial court committed plain error by imposing prison sentences for both marijuana-related offenses, because those offenses were allied offenses of similar import under R.C. 2941.25 and should have merged for purposes of sentencing.

{¶34} Sentencing a defendant to separate, concurrent terms for allied offenses of similar import that merge results in plain error. *See* R.C. 2941.25(A); *State v. Hamilton*, 1st Dist. Hamilton No. C-160247 and C-160248, 2017-Ohio-8140, ¶ 55. In

this case, the state brought up the merger issue at sentencing and informed the court that it was electing to have Thomas sentenced on the trafficking offense. After finding the offenses merged, the trial court imposed sentences on both the trafficking and possession offenses and ordered that the sentences be served concurrently. Because the trial court imposed separate sentences for the drug offenses after determining that the offenses merged, Thomas has demonstrated plain error. We therefore sustain the fourth assignment of error.

{¶35} Ordinarily, this court would reverse the judgment of conviction with respect to the allied offenses and remand the cause for resentencing to allow the state to choose which of the allied offenses to pursue at sentencing. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one and two of the syllabus. But here, at the sentencing hearing the trial court determined that the offenses merged and the state elected to pursue the trafficking offense. Thus, we remand only for the trial court to correct the judgment of conviction to reflect the merger of the possession offense into the trafficking offense and to eliminate the language imposing a prison term for the possession offense.

### *III. Conclusion*

{¶36} In sum, we affirm the trial court's judgment of conviction but remand the case for the trial court to correct the judgment of conviction to reflect the merger of the possession offense into the trafficking offense.

Judgment accordingly.

**MOCK, P.J.,** and **DETERS, J.,** concur.

Please note:
        The court has recorded its own entry this date.