[Cite as *State v. Tasciuc*, 2024-Ohio-5556.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

VLADIMIR TASCIUC,

    DEFENDANT-APPELLANT.

CASE NO. 5-24-10

O P I N I O N

---

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2023 CR 400**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  November 25, 2024**

---

**APPEARANCES:**

    *William T. Cramer* **for Appellant**

    *Phillip A. Riegle* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Vladimir Tasciuc ("Tasciuc") appeals the judgment of the Hancock County Court of Common Pleas, arguing that the trial court failed to ensure that his waiver of counsel was knowing, voluntary, and intelligent. For the reasons set forth below, the judgment of the trial court is reversed.

*Facts and Procedural History*

{¶2} On September 7, 2023 at roughly 9:00 P.M., Nicole Fila ("Fila") was driving southbound on Interstate 75 in a Honda Pilot. As she was going through Hancock County, her vehicle was behind a flatbed tractor-trailer operated by Tasciuc. After noticing that he was "driving erratically," Fila sought to pass Tasciuc and made sure to give him "a wide berth" as she moved into the lane ahead of his vehicle. (Tr. 242, 244).

{¶3} Once she had merged, Fila looked into her rearview mirror just in time to see Tasciuc ram into the back of her vehicle. In response to the impact, Fila moved her vehicle off of the roadway and onto the median because she was afraid of getting rammed again. She saw the flatbed tractor-trailer continue to go southbound in close proximity to another tractor-trailer. Fila's husband then called 9-1-1.

{¶4} Devinder Rai ("Rai") was driving a tractor-trailer southbound on Interstate 75 ahead of where Fila had pulled her vehicle off of the roadway. As he approached a rest area, his vehicle was struck multiple times on the roadway by Tasciuc's flatbed tractor-trailer. Rai pulled off of the roadway and exited his vehicle. As Tasciuc continued to ram into the stationary tractor-trailer, Rai used the phone on his camera to record this portion of the incident. At this point, Tasciuc exited his vehicle and tackled Rai.

{¶5} After being dispatched to respond to the 9-1-1 call from Fila's husband, Trooper Gossard came upon Tasciuc and Rai in a ditch near to where the two tractor-trailers were located. At this time, Tasciuc was shirtless and was striking at Rai. Trooper Gossard ordered Tasciuc to stop. In response, Tasciuc started waving his shirt around in a circular motion while shouting, "the forces of evil have no power over me" and moved towards Trooper Gossard. (Ex. 51). After failing to comply with several warnings to stop, Tasciuc was tased and then taken to the hospital.

{¶6} At a police interview the following day, Tasciuc explained that he was trying to free "forty kids" who were in the back of the tractor-trailer that Rai was driving. (Ex. 51). Tasciuc claimed that he knew the tractor-trailer contained children because he was "Saint Vladimir with the pink shoes," and "there are saints that can look at something and understand." *Id*. Tasciuc indicated he had been following Rai's tractor-trailer for around fifteen minutes when Fila's vehicle pulled

in front of him.  He then sought to push Fila's car out of the way so that he could continue "his mission to stop the truck for the kids."  *Id.*

{¶7} Once he caught up to the truck, he struck Rai's tractor-trailer "four or five times."  (Ex. 51).  After Rai stopped, Tasciuc then hit the tractor-trailer another time to make sure Rai could not leave.  When Rai was out of his vehicle, Tasciuc accused Rai of "doing inhumane things"; told him to put his phone down; and said that Rai "better start running."  *Id.*  Tasciuc explained that he wanted Rai's phone to find out who was behind the abduction of the children.  He then repeatedly told Rai to "open the doors" of the truck while they struggled.  *Id.*

{¶8} Tasciuc stated that, when the police arrived, he wanted to show that Trooper Gossard was "powerless," so he refused to follow his orders.  (Ex. 51).  Towards the end of the interview, he indicated that, as he drives from place to place, he "sees things that don't really add up" and that "there's a lot of sh*t going on in these gas stations" that he visits.  *Id.*  He claimed that people used "dark magic" on these "kids to disorient" them.  *Id.*  The interview concluded after he said that Tasciuc was his name from "a previous life" and that he was now "Saint Vladimir."  *Id.*

{¶9} On September 19, 2023, Tasciuc was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2), second-degree felonies.  On September 22, 2023, Tasciuc appeared before the trial court and was informed that he was potentially eligible to have a court-appointed attorney.  In response, Tasciuc

-4-

said, "I do not want a, have no desire for a court appointment of attorney for Defendant. I can do this all by myself. I will do this by myself." (Sept. 22 Tr. 4). When asked if he would hire counsel, Tasciuc said:

> Not at this point, not at this point. I'm just going to wait until you guys are going to falsify and forge a few more documents, and then I'm going to come at y'all with full force, but until then, I'm going to do it all by myself.

*Id.* at 5. The magistrate continued the arraignment to allow Tasciuc to have time to consider whether he wanted to proceed pro se and to allow Tasciuc to have a hearing with the judge if he chose to waive his right to counsel.

{¶10} On October 6, 2023, Tasciuc appeared for the continued arraignment. Oct. 6 Tr. 4. When asked whether he wanted an attorney, he stated, "I do not want nobody from y'all's prosecutors, whatever, kangaroo Court, to represent me. I would represent myself." (Oct. 6 Tr. 6). The judge gave a detailed explanation of what a jury trial entailed and the constitutional rights that were implicated in criminal proceedings. After reading a waiver of counsel form to Tasciuc, the trial court told Tasciuc that proceeding pro se was "a bad idea" and that he "should have counsel." *Id.* at 31. After further inquiry, Tasciuc affirmed that he understood his right to an attorney and then signed a written waiver of counsel form.

{¶11} On November 17, 2023, Tasciuc appeared at a status conference where the State raised the issue of the defendant's competency to stand trial based upon the statements he made about being "Saint Vladimir" in several recordings. (Nov.

17 Tr. 6). In response, Tasciuc called questions about his competency to stand trial "R-U-B-B-I-S-H, rubbish." *Id*. at 10. The trial court then asked Tasciuc a series of questions and discussed what transpired in criminal proceedings with him. The trial court then concluded that "Mr. Tasciuc is competent. I don't see a basis or a need for an evaluation." *Id*. at 30. However, Tasciuc was not represented by an attorney at the time that the trial court made this determination.

{¶12} On December 4-5, 2023, a jury trial was held on these charges. During opening statements, the prosecutor provided a detailed description of what Tasciuc was accused of doing on the night of September 7, 2023. Tasciuc then followed the State's remarks by saying the following:

> [Tasciuc:] I'll be very short. Very accurate statement of what transpired that day [referring to the State's opening statement]. I only have two little corrections. They keep claiming that I used that medallion. That medallion is about yay big, and you can't gouge nobody's eye with it. I gouged his eye with my finger.
>
> [Trial court:] Excuse me, Mr. Tasciuc. You're going to—you're telling them you think the evidence will show that you did that?
>
> [Tasciuc:] Yes. Yes.
>
> [Trial court:] Okay.
>
> [Tasciuc:] I'm saying the—the account of the actions of events that took that day, that's exactly what went down, and second correction is, they did look in the truck, but they only looked in the truck the next day, so there was a long time to—for other events to take place. But that's all I had to say.

(Tr. 172-173). Tasciuc proceeded pro se for the entire trial and did not present any evidence in his defense. The jury found Tasciuc guilty of both charges against him.

**{¶13}** The trial court ordered Tasciuc to be evaluated by a licensed psychologist as part of a presentence investigation. The psychologist concluded that Tasciuc had "a major mental disorder, namely Unspecified Schizophrenia Spectrum and Other Psychotic Disorder." (Jan. 23 Report). Further, the psychologist stated that Tasciuc had "very little insight into his mental illness and legal circumstances." *Id*. Tasciuc also told the psychologist, "I'm not going to prison. She [the Saint] is going to resurface, and I'm going to be free; she is going to get me out of here." (Brackets sic.) *Id*. On February 9, 2024, the trial court issued its judgment entry of sentencing.

*Assignment of Error*

**{¶14}** Tasciuc filed his notice of appeal on February 15, 2024. On appeal, he raises the following assignment of error:

> **The trial court violated appellant's state and federal rights to counsel by failing to ensure that his waiver of counsel was knowing, intelligent, and voluntary.**

*Standard of Review*

**{¶15}** The question of whether a defendant knowingly, voluntarily, and intelligently waived the right to counsel is subject to a de novo standard of review. *State v. Jimenez*, 2024-Ohio-5255, ¶ 12 (3d Dist.). "De novo review is independent" and is conducted "without deference to the lower court's decision." *State v.*

*Ferguson*, 2024-Ohio-1239, ¶ 17 (3d Dist.), quoting *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Legal Standard*

**{¶16}** "[T]he Sixth Amendment as made applicable to the states by the Fourteenth Amendment guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he knowingly, voluntarily and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 377-378 (1976).

> In determining whether a defendant has knowingly, intelligently, and voluntarily waived his right to counsel, the trial court is required to undertake a two-part inquiry: (1) whether the defendant is competent to waive the right to counsel if it has reason to doubt the defendant's competency, and (2) whether the waiver is knowing and voluntary.

*State v. Jackson*, 2015-Ohio-1694, ¶ 4 (3d Dist.), quoting *State v. Vordenberge*, 2002-Ohio-1612, ¶ 12 (1st Dist.).

**{¶17}** The issue of a defendant's competency to waive counsel is tied to his or her competency to stand trial. *State v. Stiltner*, 2019-Ohio-4631, ¶ 9 (3d Dist.). If a defendant is "not competent to stand trial, he [or she] would also lack the competence to waive counsel." *Id*. at ¶ 7. *See State v. Jordan*, 2004-Ohio-783, ¶ 27 (the standard for determining whether a defendant is competent to stand trial is the same as the standard governing whether a defendant is competent to waive counsel). R.C. 2945.37 governs the process of determining competency issues in a criminal proceeding and reads, in its relevant part, as follows:

(B) In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

(C) The court shall conduct the hearing required or authorized under division (B) of this section within thirty days after the issue is raised, unless the defendant has been referred for evaluation in which case the court shall conduct the hearing within ten days after the filing of the report of the evaluation or, in the case of a defendant who is ordered by the court pursuant to division (I) of section 2945.371 of the Revised Code to undergo a separate intellectual disability evaluation conducted by a psychologist designated by the director of developmental disabilities, within ten days after the filing of the report of the separate intellectual disability evaluation under that division. A hearing may be continued for good cause.

(D) *The defendant shall be represented by counsel at the hearing* conducted under division (C) of this section. If the defendant is unable to obtain counsel, the court shall appoint counsel under Chapter 120. of the Revised Code or under the authority recognized in division (C) of section 120.06, division (E) of section 120.16, division (E) of section 120.26, or section 2941.51 of the Revised Code before proceeding with the hearing.

(E) The prosecutor and defense counsel may submit evidence on the issue of the defendant's competence to stand trial. * * *

(Emphasis added.) R.C. 2945.37. Thus, "[o]nce the issue of competency is raised

prior to trial, the statutory language mandates a hearing is held." *Stiltner* at ¶ 8. *See*

*State v. Godley*, 2018-Ohio-4253, ¶ 15 (3d Dist.). "Additionally, the statute further

requires that a defendant be represented by counsel at the hearing." *Stiltner* at ¶ 8.

*See State v. Were*, 94 Ohio St.3d 173, 175 (2002) ("[A]n evidentiary competency

hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial.").

{¶18} "[W]hen there is reasonable cause to doubt a defendant's competency to waive the right to counsel or to stand trial, the trial court must make a sufficient inquiry before proceeding in order to protect the defendant's due process right to a fair trial." *State v. Thomas*, 2019-Ohio-132, ¶ 15 (1st Dist.). "[A] defendant is presumed to be competent to stand trial. In order to be deemed incompetent, the court must find by a preponderance of the evidence that 'because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense.'" *State v. Austin*, 2010-Ohio-6583, ¶ 26 (7th Dist.), quoting R.C. 2945.37(G).

*Legal Analysis*

{¶19} On appeal, Tasciuc argues that the trial court failed to ensure that his waiver of counsel was knowing, voluntary, and intelligent. This inquiry involves a consideration of whether he was competent to effectuate such a waiver. *Jackson*, 2015-Ohio-1694, ¶ 4. Critically, at the November 17, 2023 status conference, the State raised the issue of Tasciuc's competency, mentioning "his behavior at the time of the incident, during his [police] interview, and even * * * during some jail calls * * *." (Nov. 17 Tr. 7, 8). The prosecutor mentioned that Tasciuc "referred to

himself as Saint Vladimir * * * with pink Nike shoes" and stated that "the power of Christ compels the [police] officers * * *." *Id.* at 7.

**{¶20}** The prosecutor indicated that she was raising these concerns at the status conference because she wanted to ensure that the trial court was aware of this "additional information" and had "all the details" that were obtained by the State through various reports. (Nov. 17 Tr. 6-7). The prosecutor then expressed concerns about how these issues might impact Tasciuc's decision to proceed pro se and asked whether the trial court thought a competency evaluation was necessary. *Id.* at 6. After acknowledging that the State had "raised" the issue of competence, the trial court then asked Tasciuc a number of questions before concluding that he was competent. *Id.* at 8.

**{¶21}** Even if the questions asked of Tasciuc at this November 17, 2023 hearing were considered to be a competency hearing within the meaning of R.C. 2945.37(C), he was still not represented by counsel as required by R.C. 2945.37(D). *See Stiltner*, 2019-Ohio-4631, ¶ 8; *State v. Peeples*, 2012-Ohio-1149, ¶ 23 (7th Dist.) ("At the competency hearing the defendant must be represented by counsel."). Under the facts of this case, the failure to comply with this statutory mandate after the State raised the issue of competence constitutes reversible error.

**{¶22}** In conclusion, we cannot fully resolve the issue of whether Tasciuc's waiver was knowingly, voluntarily, and intelligently entered until the issue of his competency is resolved in accordance with the statutory requirements of R.C.

-11-

2945.37. *See Jackson*, 2015-Ohio-1694, ¶ 4. For this reason, we reverse the judgment of the trial court so that Tasciuc can be represented by counsel at a competency hearing as required by R.C. 2945.37(B)-(D). Accordingly, the sole assignment of error is sustained.

### *Conclusion*

**{¶23}** Having found error prejudicial to the appellant in the particulars assigned and argued, the judgment of Hancock County Court of Common Pleas is reversed. This cause of action is remanded for further proceedings consistent with this opinion.

*Judgment Reversed*
*And Cause Remanded*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**