[Cite as *State v. Heard*, 2017-Ohio-4.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2016-03-008 |
| | : | O P I N I O N |
| - vs - | | 1/3/2017 |
| | : | |
| ROBIN L. HEARD, | : | |
| Defendant-Appellee. | : | |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRB 1600305


Laura R. Gibson, 69 N. South Street, Wilmington, Ohio 45177, for plaintiff-appellant

Robin L. Heard, 231 S. South Street, Wilmington, Ohio 45177, defendant-appellee, pro se


**HENDRICKSON, J.**

{¶ 1}   Plaintiff-appellant, the state of Ohio, appeals a decision of the Clinton County Municipal Court dismissing a misdemeanor count of domestic violence against defendant-appellee, Robin L. Heard.  For the reasons set forth below, we reverse the municipal court's decision and remand the matter for further proceedings.

{¶ 2}   On February 16, 2016, Sergeant Ronald Cravens was called to Heard's home on a report of a domestic violence incident between Heard and her 15-year-old son.  Heard

was ultimately charged by complaint with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. Craven's affidavit in support of the complaint set forth the following:

> Upon my arrival to the residence * * * for a reported domestic violence call between a mother and child, I made contact with the two subjects who were separated at that time. I found the mother to be very intoxicated, and per her admission she had consumed "6 Bud Light Platinum beers." She had no visible signs of injury and was sweating through her shirt at the shoulder blade area. I also spoke with the juvenile T.A. (09-26-2000) as he came up from the basement. His shirt was stretched out at the collar, and he had visible signs of injury to [his] right arm, left chest, right side, and inside lip. He advised that his mom and he got into an argument and she attacked him. The father also stated that "it went to [sic] far" but declined to give a statement. I found, based on the totality of the circumstances, that the injuries served no disciplinary purpose and were consistent with those of an attack. The female was advised of her rights as per Miranda, and arrested without incident for Domestic Violence. She was taken directly to CCSO Jail for incarceration. This incident occurred in the City of Wilmington, County of Clinton, State of Ohio.

{¶ 3} On February 17, 2016, Heard appeared from jail on video for her arraignment. Heard's husband, her adult son, and a victim advocate were present in the court for the arraignment. The state did not have an attorney present at the arraignment and neither the victim nor Sergeant Cravens were in attendance. After the municipal court informed Heard of the charge she was facing, Heard entered a not guilty plea and requested time to obtain representation. The court granted Heard's request, stated it was turning to the "[n]ext phase of the proceeding," and inquired if the victim advocate had heard from the alleged victim. The victim advocate informed the court that she had not had contact with T.A., but she had spoken with T.A.'s father, i.e., Heard's husband, who was not requesting a protection order on behalf of the child. The advocate also informed the court that Heard's husband and adult son wished to address the court.

{¶ 4} The adult son was not present when the altercation between Heard and T.A.

occurred. Heard's husband, however, was present for the altercation. He informed the court that "this ain't never happened [before], it was a one time thing, a misunderstanding. * * * [T.A.] wouldn't listen and then they got to tasseling." The court then had the following conversation with Heard's husband:

> THE COURT: What happened?
>
> [HUSBAND]: Well, my 15 year old, you know 15 year olds they get mouthy, he's [sic] got grounded because he's got F's, well he kept asking his mom, she had been drinking a little bit, but he kept asking her to go somewhere and she kept telling him, she had been telling him all week, you're not going nowhere until you get your grades up. Well, my son is 15 but he is about six foot and he weighs about 250, he thinks he can just stand up and say what he wants and he gets all loud with his mom. And when she told him to shut up, they both got in each other's face and it started a shoving match. That's where, and wrestling around that's where he got marks all over from her grabbing him and him grabbing her. And I tried to get them both apart from each other, and when I got them stopped I made him go downstairs and her sit on the thing, that's when the police officers came. It was all over, he was downstairs in the basement, she was on the chair sitting down.
>
> THE COURT: Who called the police?
>
> [HUSBAND]: I guess one of his friends that was at the house. But there was no knock down drag out fighting, my wife has never done that. She was just trying to get, every time she would tell him to shut up he would speak out and it just escalated after that, just neither one of them would just be quiet. Like I said, this has never happened and she has never been in trouble for nothing like this.
>
> THE COURT: So, she had too much to drink, he got mouthy with his mother and grabbed her, she went upside his head?
>
> [HUSBAND]: Exactly. * * *

{¶ 5} After hearing from Heard's husband, the court addressed the adult son, stating: "See that lady on the monitor, don't ever mouth her or back talk her. I wish the 15 year old was here to hear it. This case is dismissed, this lady shall be discharged immediately, teenagers need to never put their hands on their mother." The court's February 17, 2016

- 3 -

journal entry stated, in its entirety, "Case dismissed. Teenagers should never grab their mothers. Release Defendant immediately."

{¶ 6} The state timely appealed, raising as its sole assignment of error the following:

{¶ 7} THE TRIAL COURT ERRED IN DISMISSING [HEARD'S] CASE.

{¶ 8} In its sole assignment of error, the state contends the municipal court abused its discretion when it "sua sponte dismisse[d] [the] domestic violence case at arraignment without hearing from the state or the victim." In support of its argument, the state relies on Crim.R. 48 and the supreme court's holding in *State v. Busch*, 76 Ohio St.3d 613 (1996).

{¶ 9} Crim.R. 48(B) provides that "[i]f the court *over objection of the state* dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal." (Emphasis added.) Pursuant to this rule, "trial judges may *sua sponte* dismiss a criminal action over the objection of the prosecution." (Emphasis sic.) *Busch*, 76 Ohio St.3d at 615.

{¶ 10} "A reviewing court assesses whether a trial court erred by dismissing a criminal charge under an abuse of discretion standard." *State v. Murray*, 12th Dist. Clermont No. CA2016-01-005, 2016-Ohio-7364, ¶ 9, citing *Busch* at 616. An abuse-of-discretion standard of review is a deferential review. *Id.*, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 11} In *Busch*, the Ohio Supreme Court had the opportunity to consider a municipal court's dismissal of two misdemeanor domestic violence charges. In that case, the alleged victim of the domestic violence offenses, the mother of the defendant's child, made several appearances in court to repeatedly request that the charges be dismissed so that she could maintain a "family relationship" with the defendant. *Busch*, 76 Ohio St.3d at 613-614. The

victim informed the court that the domestic violence incidents were isolated, the events occurred during a difficult time in her and the defendant's relationship, she and the defendant had been actively participating in counseling, she did not fear that the defendant would ever assault her again, and coercion had not influenced her desire to have the charges dismissed. *Id.* Over the state's objection, the trial court dismissed the charges. *Id.* at 614.

{¶ 12} The state appealed, and the Tenth District reversed the municipal court's decision after concluding that the trial court lacked authority to dismiss the charges over the objection of the prosecution. *Id.* at 615. The Ohio Supreme Court reversed the Tenth District's decision, noting that "[t]rial judges are at the front lines of the administration of justice in our judicial system, dealing with the realities and practicalities of managing a caseload and responding to the rights and interests of the prosecution, the accused, and victims. A court has the 'inherent power to regulate the practice before it and protect the integrity of its proceedings.'" *Id.*, citing *Royal Indemn. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 33-34 (1986). The court found that dismissal was proper, noting that "the trial court used its judicial power to do its best with a matter which no longer seemed to fit the court system." *Id.* at 616. In finding no error in the trial court's dismissal of the case, the supreme court identified the following factors that a court should consider in determining whether dismissal of a domestic violence case pursuant to Crim.R. 48(B) is appropriate: "[t]he seriousness of the injuries, the presence of independent witnesses, the status of counseling efforts, whether the complainant's refusal to testify is coerced, and whether the defendant is a first-time offender." *Id.*

{¶ 13} In the present case, the municipal court dismissed the domestic violence charge pending against Heard without considering several of the above-mentioned factors. While the court heard from Heard's husband about the events that took place on the evening of February 16, 2016, the court did not hear from T.A., the victim of the alleged crime, from

Sergeant Cravens, the complainant and investigator of the alleged crime, or the state, the prosecutors of the crime.[1] As this court recently recognized, "a Crim.R. 48(B) 'interests of justice' dismissal necessarily involves a consideration of the safety and well-being of the child victims." *Murray*, 2016-Ohio-7364 at ¶ 15. Where the domestic violence offense involves a child-victim, the court should receive input from the child as to the events that transpired and led to the charges and should consider the safety and well-being of the child. Here, there is nothing in the record to suggest that the municipal court gave any consideration to the child-victim's perspective of the events, to whether the child-victim had been exposed to such harm in the past, to the risk the child-victim faced to further exposure of such harm, or to whether Heard had participated in counseling or some other form of therapeutic intervention to mitigate any continued risk of harm to T.A. or others living in her home. As the municipal court did not receive any input from the victim, the complainant, or the state and further failed to consider the factors set forth in *Busch*, we find that the municipal court abused its discretion in dismissing Heard's domestic violence charge based upon the specific facts of this case.

{¶ 14} The state's sole assignment of error is therefore sustained, and this matter is reversed and remanded for further proceedings consistent with this opinion.

{¶ 15} Judgment reversed and remanded.

M. POWELL, P.J., and S. POWELL, J., concur.

---

1. Notably, the victim advocate also had not spoken with T.A. and was therefore unable to provide insight into T.A.'s version of events or the seriousness of T.A.'s injuries.