[Cite as *State v. Nevels*, 2024-Ohio-4964.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,

  v.

NICHOLAS A. NEVELS,

    DEFENDANT-APPELLEE.

CASE NO. 8-23-31

O P I N I O N

**Appeal from Logan County Common Pleas Court**
**Trial Court No. CR 22 11 0268**

**Judgments Reversed and Cause Remanded**

**Date of Decision: October 15, 2024**

APPEARANCES:

    *Eric C. Stewart* **for Appellant**

    *Alison Boggs* **for Appellee**

**WALDICK, J.**

{¶1} Plaintiff-appellant, State of Ohio ("the State"), appeals the December 18, 2023 judgments of the Logan County Common Pleas Court, wherein the trial court dismissed a count of the indictment pending against the defendant-appellee, Nicholas Nevels ("Nevels"), and ordered that certain evidence was inadmissible at trial as to another count in the indictment. For the reasons set forth below, we reverse.

*Procedural and Factual Background*

{¶2} This matter stems from an October 16, 2022 traffic stop, by the Bellefontaine Police Department, of a vehicle driven by Nevels. As a result, on November 8, 2022, a three-count indictment was returned by a Logan County grand jury. Count 1 of the indictment charged Nevels with Operating a Vehicle Under the Influence of Alcohol or a Drug of Abuse ("OVI"), a fourth-degree felony in violation of R.C. 4511.19(A)(2)(a), (A)(2)(b), and (G)(1)(d), with the OVI charge based on the general allegation that Nevels had operated a vehicle while under the influence of alcohol. Count 2 charged Nevels with OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(f) and (G)(1)(d), with the OVI charge in that count based on the allegation that Nevels had operated a vehicle when he had a specified concentration of alcohol in his blood. Count 3 of the indictment charged Nevels with Identity Fraud, a fifth-degree felony in violation of R.C. 2913.49(B)(1).

{¶3} On June 16, 2023, an arraignment was held and Nevels entered a not guilty plea to the indictment.

{¶4} On November 3, 2023, Nevels filed a motion to suppress evidence/motion in limine, seeking the exclusion of (1) the results of any field sobriety tests and/or the results of any testing of breath, blood, or urine to determine the concentration of alcohol or drugs in Nevels' body; (2) any statements made by Nevels; (3) observations and opinions of any police officers as to Nevels' sobriety or intoxication; and (4) any and all evidence obtained as the result of the warrantless seizure of Nevels. The motion then set forth seven grounds in support of Nevels' request that the stated evidence be suppressed or otherwise deemed inadmissible at trial.

{¶5} On December 1, 2023, the first part of a suppression hearing was held. At that initial hearing, the prosecution presented a number of exhibits and the testimony of two witnesses: Tony Hurley, a registered nurse employed by Mary Rutan Hospital who drew blood from Nevels following his arrest, pursuant to a search warrant obtained by the police, and Andrew Purk, an officer with the Bellefontaine Police Department who was the arresting officer and search warrant affiant in the case. The proceedings on the motion to suppress were then adjourned until December 15, 2023.

{¶6} On December 12, 2023, Nevels filed a supplemental motion to suppress/motion in limine. In that motion, Nevels moved to suppress blood

evidence obtained from Nevels pursuant to the search warrant, on the basis that law enforcement violated Crim.R. 41 and Nevels' constitutional rights. Specifically, the motion alleged that law enforcement executed the search warrant in the case during the nighttime hours without obtaining a nighttime search warrant as required by Crim.R. 41 for non-daytime searches and, further, that a prompt return of the search warrant was not made by law enforcement as also required by Crim.R. 41.

{¶7} On December 14, 2023, the State of Ohio filed a memorandum in response to the supplemental motion to suppress. In that response, the prosecution acknowledged that it did not dispute the facts asserted by Nevels regarding the lack of a nighttime search warrant and the fact that a return of the warrant was not timely made. However, the State argued that Nevels' supplemental motion should be denied as the violations of Crim.R. 41 were not constitutional violations and therefore the exclusionary rule was inapplicable.

{¶8} On December 15, 2023, the suppression hearing resumed, at which time the prosecution presented additional exhibits and the testimony of Lindsie Mayfield, a criminologist in the toxicology section of the Ohio State Highway Patrol laboratory, who analyzed the blood sample from Nevels for the presence of alcohol. The defense then presented evidence, calling Officer Purk to the stand to be questioned concerning the issues raised in the supplemental motion to suppress.

{¶9} Following argument by counsel on the various suppression issues raised by Nevels' motions, the trial court ruled from the bench that the motions to suppress

were overruled because no constitutional violations had occurred. However, the trial court then *sua sponte* announced that, pursuant to Crim.R. 48, the court was dismissing Count 2 of the indictment. In making that order from the bench, the trial court found that the dismissal was necessary due to the procedural violations of Crim.R. 41 when it came to the search warrant, and also because the suppression hearing evidence had established that the judge who signed the search warrant had made corrections to the defendant's name and identifying information on the warrant. In response to a request by the prosecutor for clarification of the trial court's ruling, the court ruled that Count 2 would be dismissed and that no evidence stemming from the search warrant would be permitted at trial as to Count 1.

{¶10} On December 18, 2023, the trial court filed two judgment entries. In the first one, Docket No. 65, the trial court journalized its denial of Nevels' motion to suppress and supplemental motion to suppress. Following a detailed analysis, the trial court found the alleged constitutional violations raised by the initial motion to suppress to be without merit, and overruled that motion. As to the supplemental motion to suppress evidence stemming from the search warrant, which was based on the violations of procedural provisions in Crim.R. 41, the trial court found that the violations were neither intentional nor based on some nefarious motive, but noted that it was undisputed that the provisions of that rule were violated as alleged by Nevels (i.e. law enforcement executed the search warrant during the nighttime hours without obtaining a nighttime search warrant as required by Crim.R. 41 and,

further, that a return of the search warrant was not made in a prompt fashion as also required by Crim.R. 41).   However, the trial court found that the exclusionary rule cannot be applied to non-constitutional violations and therefore also overruled the supplemental motion to suppress the search warrant evidence, finding that the test results of Nevels' blood-alcohol level were admissible at trial.   In that same judgment entry, the trial court then added a footnote stating "[t]he Court's subsequent decision based on Criminal Rule 48(B) negates the admissibility of this evidence." (Docket No. 65, p. 12).

{¶11} In the second judgment entry filed on December 18, 2023, Docket No. 66, the trial court journalized its dismissal of Count 2 of the indictment.   In that decision, the trial court found that the suppression hearing evidence established that the Bellefontaine Police Department failed to comply with the requirements of Crim.R. 41 in two respects: (1) there was no authorization in the search warrant for a nighttime search, and (2) the warrant and inventory were not returned to the court of the issuing judge within a reasonable time.   The trial court further found that "the testimony demonstrated that the warrant was not properly prepared when presented to the Judge who found it necessary to correct the warrant by inserting all the identification information regarding the subject of the warrant (i.e. the Defendant who would have his blood drawn) and also deleting incorrect identification information (of a prior subject)." (Docket No. 66, pp. 1-2).   The trial court then invoked the "remedy" of Crim.R. 48(B), stating:

As announced in open Court, the Court determines that dismissal of Count 2 of the indictment is necessary for the following reasons. **First,** it is necessary to uphold the integrity of the requirements of the Criminal Rules. Doing so adds urgency to their understanding and does not allow them to be ignored when traditional suppression is not possible. Not imposing a consequence for clear violations is unacceptable. **Second,** the Court concludes that the Bellefontaine Police Department improperly caused the issuing Judge to become a scrivener and advocate for the warrant when it was not properly prepared when presented. Obviously, the Judge cannot undertake such roles. Here, it appears that the Judge's correcting the warrant made it possible for the three hour blood draw requirement to be met when the warrant should have been rejected and resubmitted later (likely outside the three hour limit). Protecting the integrity and independence of the issuing judge is accomplished by the dismissal remedy. **Third,** failing to impose some detrimental remedy for non-compliance undermines the integrity of the investigating agency and the public's confidence that law enforcement agencies are also required to follow applicable laws. (If ignorance of the law is not a defense for suspects, ignorance of the law is not a defense for the investigators.) **Fourth,** dismissal of Count 2 only eliminates a duplicitous charge for which the penalties would merge if convicted of both Counts 1 and 2. This mitigation reduces any harm to the public and the jury when evidence is otherwise suppressed under constitutional contexts. **Fifth,** since the investigating officer is also a training officer, the learning experience to him of being held to a higher standard of compliance will likely be relayed to future students and law enforcement officers. A greater social good is thereby accomplished beyond the mere application of one case.

(Emphasis in original). (Docket No. 66).

{¶12} On December 18, 2023, the State of Ohio filed a notice of appeal of the judgments entered by the trial court earlier on that same date. As to the ruling relating to the admissibility of the search warrant evidence, the state's notice of appeal was accompanied by a certification made pursuant to Crim.R. 12(K).

{¶13} In the appeal now pending before this Court, the State of Ohio raises two assignments of error.

## First Assignment of Error

**The trial court erred in dismissing Count 2 of the indictment.**

## Second Assignment of Error

**The trial court erred in ruling the blood-alcohol was inadmissible at trial.**

*First Assignment of Error*

{¶14} In the first assignment of error, the State of Ohio asserts that the trial court erred in dismissing Count 2 of the indictment pursuant to Crim.R. 48.

Crim.R. 48 provides:

**(A) Dismissal by the State.** The state may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate.

**(B) Dismissal by the Court.** If the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal.

{¶15} "[A] judge may dismiss a case pursuant to Crim.R. 48(B) if a dismissal serves the interests of justice." *State v. Busch*, 76 Ohio St.3d 613, 615 (1996). In *Busch*, the trial court granted the request of a domestic violence victim to dismiss the case. The Supreme Court of Ohio found the dismissal to be within the trial court's discretion pursuant to Crim.R. 48. In finding the dismissal to be proper, the Ohio Supreme Court noted that "Crim.R. 48(B) recognizes by implication that trial judges may *sua sponte* dismiss a criminal action over the

objection of the prosecution, since the rule sets forth the trial court's procedure for doing so." *Id.* The Court went on to specifically hold that "[t]he rule does not limit the reasons for which a trial judge might dismiss a case, and we are convinced that a judge may dismiss a case pursuant to Crim.R. 48(B) if a dismissal serves the interests of justice." *Id.*

**{¶16}** We review a trial court's dismissal of a criminal charge under Crim.R. 48(B) for an abuse of discretion. *State v. Myrick*, 2020-Ohio-974, ¶ 7 (3d Dist.), citing *State v. Heard*, 2017-Ohio-4, ¶ 10 (12th Dist.) and *State v. Elqatto*, 2012-Ohio-4304, ¶ 17 (10th Dist.). An abuse of discretion is more than an error in judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶17}** While acknowledging a trial court's discretion to dismiss a criminal charge pursuant to Crim.R. 48(B), this Court has held that such a dismissal may not properly be ordered without adequate notice and an opportunity to be heard having been granted to the prosecution.

**{¶18}** In *State v. Myrick*, *supra*, we noted that Crim.R. 48(B) "'incorporates language clearly envisioning the awareness and participation of the state in the dismissal process.'" *Id.*, at ¶ 7, quoting *Huron v. Slauterbeck*, 2015-Ohio-5022, ¶ 8 (6th Dist.). Accordingly, in *Myrick*, the trial court's dismissal of a criminal charge was found to be an abuse of discretion where the prosecution had no notice that

dismissal was being contemplated and was not provided an opportunity to be heard on that issue.

{¶**19**} In *State v. Walker*, 2020-Ohio-4949 (3d. Dist.), this Court found that the trial court erred in *sua sponte* dismissing a criminal complaint pursuant to Crim.R. 48(B) when, although a hearing was held just one day before the dismissal, the trial court did not make any statement on the record indicating to the parties that it was contemplating dismissal. *Id*., at ¶ 10. Because the trial court failed to provide notice to the parties of its intention to dismiss the case, and therefore the State was not afforded the opportunity to object to the dismissal or provide an argument in opposition to dismissal, we concluded that the trial court abused its discretion by dismissing the criminal charges against Walker. *Id.*

{¶**20**} In the instant case, the trial court dismissed Count 2 on its own motion and without any advance notice to the parties that dismissal was being considered. While the trial court articulated findings of fact and the reasons for the dismissal, the State was not provided an adequate opportunity to object or to advance an argument in opposition to dismissal. Accordingly, we find that the trial court's *sua sponte* dismissal of Count 2 of the indictment under such circumstances was an abuse of discretion and, therefore, reversible error.

{¶**21**} The first assignment of error is sustained.

*Second Assignment of Error*

{¶22} In the second assignment of error, the State of Ohio asserts that the trial court erred in ruling that Nevels' blood-alcohol test results, stemming from a blood sample obtained via a search warrant, were inadmissible as to Count 1. Upon review, we find that the State's contention here also has merit.

{¶23} As detailed above, the trial court in this case overruled a defense motion to suppress the blood-alcohol evidence obtained by law enforcement pursuant to a search warrant. However, due to law enforcement's non-compliance with two procedural provisions of Crim.R. 41, which governs the execution of search warrants, the trial court then *sua sponte* dismissed Count 2 of the indictment, which was an OVI charge based specifically on the alleged level of alcohol in Nevels' blood at the time of his arrest.

{¶24} In ordering the dismissal of Count 2, the trial court further held – both on the record when ruling from the bench and in its subsequent judgment entries – that the dismissal of Count 2 also served to render the blood-alcohol test results inadmissible as to Count 1, being an OVI charge based on the general allegation that Nevels was operating a motor vehicle under the influence of alcohol. The trial court did not elaborate as to why it believed that the dismissal of Count 2 rendered the blood-alcohol test results inadmissible as to Count 1, and this Court is unable to independently surmise what the trial court's logic may have been, beyond that court's obvious concern that Crim.R. 41 was not strictly complied with by the law

enforcement officers involved in investigating Nevels' alleged crimes and that the judge authorizing the search warrant had made corrections to her order before signing it.

{¶25} Nevertheless, we find that the ultimate effect of the trial court's ruling that the blood test results were inadmissible as to Count 1 was to suppress that evidence, regardless of how the trial court may have characterized its decision.

{¶26} As the Supreme Court of Ohio has held, pursuant to analyzing a prosecutor's right to appeal under Crim.R. 12 and R.C. 2945.67, there is no practical distinction between the result of a ruling granting a "motion to suppress" evidence and one granting a "motion in limine" to exclude evidence. *State v. Davidson*, 17 Ohio St.3d 132, 135 (1985). In so holding, the Ohio Supreme Court found that the determination of whether a motion is a "motion to suppress" does not depend on what it is labeled but, rather, on the type of relief it seeks to obtain. *Id*. "Any other result would improperly elevate form over substance." *Id*.

{¶27} This Court finds the same to be true upon considering the actual impact of the trial court's ruling in this case on the inadmissibility of Nevels' blood-alcohol test results as to Count 1. While the trial court may not have deemed its ruling to be one suppressing evidence, suppression of evidence was the ultimate effect of the trial court's roundabout ruling that the evidence was inadmissible. Our conclusion is further bolstered by the fact that the apparent bases behind the trial court's ruling were to sanction law enforcement for failing to adhere to certain legal guidelines

and to deter similar conduct in the future, which is the purpose of the exclusionary rule, a judicially created remedy designed to have a deterrent effect on law enforcement, albeit for violations of constitutional rights. *See State v. Castagnola*, 2015-Ohio-1565, ¶ 92; *State v. Hoffman*, 2014-Ohio-4795, ¶¶ 24-26; *State v. Johnson*, 2014-Ohio-5021, ¶ 40.

**{¶28}** While the trial court's ruling on the actual motion to suppress the search warrant evidence is not directly before us on appeal, we believe that resolution of this assignment of error necessitates an analysis of the issues raised by that motion.

**{¶29}** Crim.R. 41 governs search and seizure and initially provides that "[u]pon the request of a prosecuting attorney or a law enforcement officer * * * [a] search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction[.]" Crim.R. 41(A)(1).

**{¶30}** Crim.R. 41(C) then provides:

(1) A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. * * *

(2) If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched or the person or property to be tracked. The warrant may be issued to the requesting prosecuting attorney or other law enforcement officer through reliable electronic means. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. Before ruling on a request for a warrant, the judge may require the affiant to appear personally or by reliable electronic means, and may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit. The warrant shall be directed to a law enforcement officer. A search warrant shall command the officer to search, within three days, the person or place named for the property specified. * * * The warrant shall be executed in the daytime, unless the issuing court, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. The warrant shall provide that the warrant shall be returned to a designated judge or clerk of court.

**{¶31}** Pursuant to Crim.R. 41(F), "[t]he term "daytime" is used in this rule to mean the hours from 7:00 a.m. to 8:00 p.m.""

**{¶32}** Crim.R. 41(D) sets forth procedures relating to the execution and return of search warrants, and provides, in relevant part:

(1) *Search Warrant.* The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly, either in person or by reliable electronic means, and shall be accompanied by a written inventory of any property taken. * * *

-14-

**{¶33}** Finally, Crim.R. 41(E) provides that "[t]he law enforcement officer shall attach to the warrant a copy of the return, inventory, and all other papers in connection therewith and shall file them with the clerk or the judge, if the warrant so requires."

**{¶34}** In the instant case, it was uncontested at the suppression hearing that the search warrant for Nevels' blood was served at 4:38 a.m., making it a non-daytime search pursuant to Crim.R. 41, and the police neither sought nor obtained a warrant specifying the search could be done other than during the daytime as required by the rule. It was also uncontested that, following the execution of the search warrant, the police apparently inadvertently overlooked the return of the warrant, and did not make the return until that omission was discovered over a year later, in preparation for the suppression hearing. Accordingly, the requirement of Crim.R. 41 that the return be made promptly was also violated. Finally, the uncontested evidence adduced at the suppression hearing established that the search warrant affiant, Officer Purk, utilized a preprepared template on a police department computer when drafting the affidavit and warrant for judicial review. Purk then went to the home of a local common pleas court judge, who reviewed the affidavit and found probable cause existed to issue the warrant for Nevels' blood. However, the judge noticed that the search warrant itself contained the name and identifying information of a different suspect with regard to whom the preprepared template had previously been used, something that Purk had overlooked when preparing the

paperwork. Upon making that discovery, and also finding that probable cause existed based on the affidavit that had the correct suspect's name and identifying information in it, the judge crossed out the erroneous name and identifying information in the search warrant, wrote in Nevels' name and information, initialed the corrections, and signed the search warrant.

{¶35} On the basis of the noncompliance with Crim.R. 41 regarding the time of the search and the failure to make a prompt return of the warrant, Nevels argued in the trial court that the search warrant evidence should be suppressed. The State of Ohio acknowledged the irregularities that had occurred when the warrant was obtained, but asserted that those irregularities and violations of Crim.R. 41 did not amount to violations of Nevels' constitutional rights, which precluded suppression. In overruling the motion to suppress the search warrant results, the trial court found that the State of Ohio's position was legally correct. We agree.

{¶36} "'The exclusionary rule applies to constitutional violations, not statutory ones[.]'" *State v. Simpson*, 2023-Ohio-3207, ¶ 21 (3d Dist.), quoting *State v. Campbell*, 2022-Ohio-3626, ¶ 3. Ohio courts have repeatedly and consistently held the exclusionary rule to be inapplicable where violations of Crim.R. 41 have occurred that were not violations of a constitutional nature. For example, in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986), the Supreme Court of Ohio cited with approval to the following analysis set forth in *United States v. Vasser*, 848 F.2d 508

(9th Cir. 1980), *cert. denied.* 450 U.S. 928 (1980), which discussed a violation of the analogous Fed.R.Crim.P. 41:

> Suppression is not required in all cases where the issuance of a search warrant fails to conform to the dictates of Rule 41. *Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards.* * * * Violations of Rule 41 which do not arise to constitutional error are classified as 'non-fundamental.' 'Non-fundamental' noncompliance with Rule 41 requires suppression only where:
>
> ""'(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.'" *United States v. Radlick.* [ (C.A.9, 1978), 581 F.2d 225], *supra,* at 228, quoting *United States v. Burke.* [ (C.A.2, 1975), 517 F.2d 377], *supra.*" (Emphasis added; footnote omitted).

*Wilmoth*, *supra*, at 263.

{¶37} In the instant case, in that there was probable cause set forth in the affidavit to support the search, because no material prejudice seemingly resulted to Nevels as a result of the search warrant being served during the nighttime hours and the return being overlooked by law enforcement, and because there was no evidence that the officers' non-compliance with Crim.R. 41 was intentional, the application of the exclusionary rule to the blood-alcohol evidence stemming from the search warrant was not required.

{¶38} Moreover, while the trial court was troubled by the fact that the judge signing the search warrant made corrections to the name and identifying information

on the warrant, a judge is certainly not prohibited from making corrections to its own orders, such as the search warrant here.

{¶39} In light of the foregoing, we find – for purposes of this appeal only – that the trial court did not err in overruling the motion to suppress directed at the search warrant. As the trial court correctly denied Nevels' motion to suppress the search warrant results but then indirectly fashioned its own "exclusionary rule" to sanction law enforcement for violations of a non-constitutional nature, and because the trial court cited no other legal basis for its decision deeming the evidence inadmissible as to Count 1, we must reverse that decision.

{¶40} The second assignment of error is sustained.

*Conclusion*

{¶41} Having found error prejudicial to the appellant, State of Ohio, as raised in the first and second assignments of error, the judgments of the Logan County Court of Common Pleas are reversed, and the case is remanded for further proceedings.

***Judgments reversed***
***and cause remanded***

**WILLAMOWSKI, P.J., and ZIMMERMAN, J., concur.**

**/jlm**