[Cite as *State v. Dixon*, 2025-Ohio-326.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

       CASE NO. 8-24-05

    PLAINTIFF-APPELLANT,

  v.

ERIC DIXON,                  O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 21 10 0280

**Judgment Affirmed**

Date of Decision: February 3, 2025

APPEARANCES:

*Erin G. Rosen* for Appellant

**WILLAMOWSKI, J.**

{¶1} The State of Ohio appeals the judgment of the Logan County Court of Common Pleas, arguing that the trial court erred by dismissing the indictment against defendant-appellee Eric Dixon ("Dixon"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On November 9, 2021, Dixon was indicted on two counts of passing bad checks in violation of R.C. 2913.11(B), first-degree misdemeanors. The State alleged that Dixon had issued two bad checks to Ohio Ready Mix Concrete ("ORMC"). Subsequently, the State and Dixon reached an agreement to resolve this case. Under this agreement, the State offered to dismiss the charges if Dixon paid restitution in the amount of roughly $2,040.00 to ORMC.[1]

{¶3} Defense counsel received an email from the State that directed him to mail a check to their victim advocate at the prosecutor's office. On June 27, 2023, defense counsel followed the instructions from the email and mailed a cashier's check from Dixon that was in the amount of $2,040.00. However, this cashier's check was intercepted by a third party; the payee's name was altered from "Ohio Ready Mix" to "Alidoumbia"; and the check was negotiated.

---

[1] In the judgment entry of dismissal, the trial court stated that the amount Dixon was to pay to ORMC in restitution was $2,005.18. However, Dixon made out a check to ORMC in the amount of $2,040.00.

{¶4} After discussing this situation at a status conference on January 5, 2024, the trial court noted that, "[t]here's been no, in th[is] discussion, indication to the Court that Mr. Dixon was in any way involved" with the interception or negotiation of the cashier's check. (Jan. 5 Tr. 4). The trial court then stated the theft of these funds was "criminal behavior on the part of another person that has intervened and super[s]eded Mr. Dixon's * * * getting restitution to the victim." (*Id*. at 4). The trial court then indicated that a dismissal of the charges appeared to be the proper course of action but scheduled another hearing to address this matter further.

{¶5} At a hearing on January 31, 2024, defense counsel indicated that the bank was not going to refund the money that was taken by the third party. The State argued that the charges against Dixon should not be dismissed because "the agreement had not been completed in that [ORMC] ha[d] not yet been made whole * * *." (Jan. 31 Tr. 7). Defense counsel argued that "the defendant accepted the plea offer and provided valuable consideration, which consummated the deal * * *." (*Id*. at 10).

{¶6} On February 1, 2024, the trial court issued a judgment entry that dismissed the charges against Dixon. This entry began by noting that the record contained no evidence that Dixon "had anything to do with the interception, altering, and negotiation of the check." (Doc. 45). The trial court then reasoned that agreements between the State and a defendant are generally subject to the principles of contract law. Pursuant to the mailbox rule, the trial court found that Dixon

accepted the State's offer by mailing the cashier's check as instructed to prosecutor's office. After finding that Dixon had performed under the contract, the trial court concluded that the State was bound by its agreement with Dixon.

{¶7} The State of Ohio filed its notice of appeal on February 6, 2024. On appeal, the appellant raises the following two assignments of error:

**First Assignment of Error**

**Whether the trial court erred in dismissing, sua sponte, a criminal indictment alleging fraud by Passing Bad Checks, based upon misapplication of the 'mailbox rule.'**

**Second Assignment of Error**

**Whether the trial court abused its discretion in dismissing the indictment under presumed authority of Crim.R. 48(B).**

*First Assignment of Error*

{¶8} The State of Ohio argues that the trial court did not properly apply the mailbox rule in determining that the State was bound by the agreement to dismiss the charges in this case.

Legal Standard

{¶9} The State can enter into an agreement with a defendant for the "resolution of criminal proceedings." *State v. Sibley*, 2011-Ohio-4861, ¶ 19 (6th Dist.). Such an agreement "is a contract between the prosecution and a criminal defendant * * *." *State v. Grier*, 2011-Ohio-902, ¶ 18 (3d Dist.). For this reason,

the "principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bush*, 2023-Ohio-4473, ¶ 54 (3d Dist.).

> A contract consists of an offer, an acceptance, and consideration. * * * Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. To constitute consideration, the benefit or detriment must be 'bargained for.' Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

*State v. Moore*, 2024-Ohio-1354, ¶ 17 (9th Dist.), quoting *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283 (9th Dist. 1997). "Since a plea agreement is a contract, to be construed strictly against the state, the prosecutor is required to fulfill any promise or agreement of the state."[2] *State v. Santiago*, 2023-Ohio-561, ¶ 15 (3d Dist.), quoting *State v. Zamora*, 2007-Ohio-6973, ¶ 12 (3d Dist.).

Standard of Review

**{¶10}** The existence or interpretation of a contract present questions of law that appellate courts review de novo. *GigSmart, Inc. v. AxleHire, Inc.*, 2023-Ohio-3807, ¶ 31 (1st Dist.); *Chuma v. Patterson*, 2023-Ohio-1128, ¶ 37 (4th Dist.). "De novo review is independent" and does not give "deference to the lower court's decision." *State v. Tasciuc*, 2024-Ohio-5556, ¶ 17 (3d Dist.), quoting *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.). However, on appeal, "great deference is

---

[2] We note that this arrangement is somewhat different from the type of agreement that is generally used to resolve a criminal case because the State did not ultimately seek a plea from Dixon in this case. Nonetheless, Dixon and the State entered into this agreement to bring about the resolution of a criminal case. As such, this arrangement will be held to the general legal standards that govern the typical plea agreement. *See State v. Lacy*, 1984 WL 4049, *2 (2d Dist. Oct. 5, 1984).

given to the trial court's factual findings supporting its legal conclusions." *Chuma* at ¶ 37. As the finder of fact, the trial court has "the duty * * * to determine whether there has been compliance with a plea agreement." *State v. Emch*, 2023-Ohio-3553, ¶ 22 (5th Dist.), citing *State v. Curry*, 49 Ohio App.2d 180, 183 (9th Dist. 1976). *See also State v. Namack*, 2002-Ohio-5187, ¶ 26 (7th Dist.).

Legal Analysis

**{¶11}** Both parties agree that the State offered to dismiss the charges against Dixon if he paid restitution in the amount of roughly $2,040.00. Pursuant to the directions in an email from the prosecutor's office, defense counsel mailed a cashier's check on June 27, 2023. Under Ohio law,

> an acceptance transmitted in a form invited by the offer is operative as soon as it is put out of the offeree's possession, regardless of whether it ever reaches the offeror. The 'mailbox rule' states that in the absence of any limitation to the contrary in the offer, an acceptance is effective when mailed because the offeror has the power to condition the acceptance of the offer on actual receipt.

*Gold Key Lease, Inc. v. Hood*, 2001 WL 1137315, *3 (7th Dist. Sept. 20, 2001). This rule is rooted in the reality that "one of the parties must bear the risk of loss." *Casto v. State Farm Mut. Auto. Ins. Co.*, 72 Ohio App.3d 410, 414 (10th Dist. 1991).

**{¶12}** In its brief, the State concedes that, under the mailbox rule, an enforceable agreement was formed when defense counsel dispatched the cashier's check in accordance with the instructions from the prosecutor's office. On appeal,

the State argues that the applicability of the mailbox rule only means that Dixon accepted the offer and does not mean that he fully performed under the agreement.

{¶13} However, the trial court found that Dixon fully performed his contractual obligations. At the hearing on dismissal, defense counsel read the following email that he received from the prosecutor's office:

> what we typically do in these scenarios is have the defendant send the restitution check to our office made out to the victim, Ohio Ready Mix, then we send them [ORMC] a letter and a check. * * * Please mail to the attention of * * * our victim advocate.

(Jan. 31 Tr. 8). Defense counsel reported that he complied with all of the directions he was provided in mailing the check.

{¶14} The email read by defense counsel does not set forth any act that Dixon was required to undertake but failed to perform. After considering the relevant facts, the trial court found that Dixon "performed exactly as directed by the State * * *." (Jan. 31 Tr. 11). The trial judge also found that this was "not a situation where we simply have an offer and acceptance but performance has not yet been undertaken. It has been fully undertaken by the defendant." (*Id*.). Thus, as finder of fact, the trial court determined that Dixon fully performed his contractual obligations.

{¶15} Additionally, the trial court found that Dixon had relied on the agreement. At the hearing on the dismissal, defense counsel indicated that Dixon had obtained a cashier's check for $2,040.00 pursuant to the agreement. The trial court found that the issuance of this check meant that Dixon "not only ha[d] an

expectation interest" in the agreement "but also ha[d] a reliance interest * * *." (Jan. 31 Tr. 11). In other words, once the $2,040.00 cashier's check was issued, Dixon detrimentally changed his position in reliance on his agreement with the State.

{¶16} In summary, the trial court ultimately concluded that Dixon fully performed his contractual obligations and relied to his detriment on this agreement. Based on these findings, we do not conclude that the trial court erred in determining that the State was bound by its agreement with Dixon. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

{¶17} The State of Ohio argues that the trial court abused its discretion under Crim.R. 48(B) by sua sponte dismissing the charges in this case.

Legal Standard

{¶18} Crim.R. 48(B) reads as follows: "If the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal." In interpreting this provision, the Ohio Supreme Court has held the following:

> Crim.R. 48(B) recognizes by implication that trial judges may sua sponte dismiss a criminal action over the objection of the prosecution, since the rule sets forth the trial court's procedure for doing so. The rule does not limit the reasons for which a trial judge might dismiss a case, and we are convinced that a judge may dismiss a case pursuant to Crim.R. 48(B) if a dismissal serves the interests of justice.

> A court has the 'inherent power to regulate the practice before it and protect the integrity of its proceedings.' * * * Trial courts deserve the discretion to be able to craft a solution that works in a given case.

*State v. Busch*, 76 Ohio St.3d 613, 615-616 (1996), quoting *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33-34. Thus, appellate courts "review a trial court's dismissal of a criminal charge under Crim.R. 48(B) for an abuse of discretion." *State v. Nevels*, 2024-Ohio-4964, ¶ 16 (3d Dist.).

{¶19} The Ohio Supreme Court has also noted that "neither Crim.R. 48(A) nor Crim.R. 48(B) expressly provides for a dismissal with prejudice * * *." *State v. Troisi*, 2022-Ohio-3582, ¶ 40, quoting *State v. Jones*, 2009-Ohio-1957, ¶ 13 (2d Dist.). For this reason, Crim.R. 48(B)

> general[ly] * * * does not provide a trial court authority or discretion to dismiss a criminal proceeding with prejudice unless 'there is a deprivation of a defendant's constitutional or statutory rights, the violation of which would, in and of itself, bar further prosecution.'

*State v. Thompson*, 2024-Ohio-1285, ¶ 19 (8th Dist.), quoting *Troisi* at ¶ 40, quoting *Jones* at ¶ 13. If the "[S]tate can reindict that offender and further prosecution would not be statutorily or constitutionally barred, the action must be dismissed without prejudice." *State v. Payne*, 2023-Ohio-1294, ¶ 7 (8th Dist.).

{¶20} However, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Lewis*, 2002-Ohio-3950, ¶ 21 (3d Dist.), quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971). "In other

words, a defendant has a due process right to hold the government to the promises it made that induced him * * *." *U.S. v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021).

**{¶21}** "When an allegation is made that a plea agreement has been broken, the defendant must merely show that the agreement was not fulfilled." *State v. Felder*, 2018-Ohio-826, ¶ 17 (5th Dist.), quoting *State v. Legree*, 61 Ohio App.3d 568, 571 (6th Dist. 1988). "[I]t is within the sound discretion of the trial court to determine whether a party has breached its obligation under a plea agreement." *State v. Camuso*, 1999 WL 1009828, *4 (7th Dist. Oct. 26, 1999).

**{¶22}** "The state's failure to abide by the terms of the plea agreement entitles the defendant to either specific performance or to withdrawal of his or her guilty plea." *State v. Hartley*, 2014-Ohio-4536, ¶ 8 (3d Dist.). As a general matter, specific performance is an available remedy where "the defendant has shown detrimental reliance—that a detrimental change in position has occurred in reliance upon the agreement." *State v. Padilla*, 2012-Ohio-5892, ¶ 16 (8th Dist.). "The appropriate remedy is left to the sound discretion of the trial court." *Id*. at ¶ 14. Thus, appellate courts review "the trial court's decision on the appropriate remedy * * * for an abuse of discretion." *Id*.

**{¶23}** Since Crim.R. 48(B) provides for what the trial court must do if the State objects to the dismissal, the text of this provision "clearly envision[s] the awareness and participation of the state in the dismissal process." *Huron v. Slauterbeck*, 2015-Ohio-5022, ¶ 8 (6th Dist.). In this process, "the State must be

afforded an occasion to voice its opposition to a dismissal and preserve its argument for appeal." *State v. Walker*, 2020-Ohio-4949, ¶ 9 (3d Dist.), quoting *State v. Myrick*, 2020-Ohio-974, ¶ 7 (3d Dist.).

## Standard of Review

**{¶24}** "An abuse of discretion is not merely an error of judgment." *State v. Sullivan*, 2017-Ohio-8937, ¶ 20 (3d Dist.). "Rather, an abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious." *State v. Howton*, 2017-Ohio-4349, ¶ 23 (3d Dist.). "When the abuse of discretion standard applies, an appellate court is not to substitute its judgment for that of the trial court." *State v. Richey*, 2021-Ohio-1461, ¶ 40 (3d Dist.).

## Legal Analysis

**{¶25}** At the hearing on January 31, 2024, the trial court found that Dixon had "completed his end of the bargain" and that "the State [wa]s duty-bound * * * to dismiss the case." (Jan. 31 Tr. 17). The prosecutor objected to this conclusion, arguing "that the agreement had not been completed" and that the State was not bound by its terms. (*Id.* at 7). This objection indicated that the State was not, due to its understanding of this situation, going to perform under this agreement and was not going move for a dismissal of the charges in the indictment. After recognizing that the State may want to preserve this issue for appeal, the trial court entered an order that dismissed the charges against Dixon.

{¶26} Under the first assignment of error, we noted that the trial court found that Dixon fully performed his contractual obligations and acted in reliance on this agreement. In light of these findings, we concluded that the trial court did not err in determining that the State was bound by its agreement with Dixon. For this reason, we conclude that, on finding that the State was not going to move for a dismissal of the charges, the trial court had the discretion to choose an appropriate remedy for the State's refusal to perform. Having examined the facts in the record, we find no indication that the trial court abused its discretion in deciding that specific performance of the agreement was the appropriate remedy in this case.

{¶27} In turn, specific performance of this agreement would ultimately require that the charges against Dixon be dismissed. After recognizing the State's objection and potential interest in appealing this determination at the January 31, 2024 hearing, the trial court opted to accomplish specific performance by ordering a dismissal of these charges. On appeal, the State raises three main arguments that assert the trial court abused its discretion by dismissing these charges.

{¶28} First, the State argues that the trial court did not provide adequate notice to the parties before the order of dismissal. At the status conference on January 5, 2023, the parties discussed the State's agreement with Dixon and the situation surrounding the negotiated cashier's check. The trial court then indicated that, based upon the facts before it, a dismissal of the charges appeared to be the appropriate course of action.

{¶29} However, the trial court decided to hold a further hearing on this matter. On January 10, 2024, a scheduling order was issued that stated a "hearing on dismissal" was set for January 31, 2024. (Doc. 44). At this hearing, the prosecutor and defense counsel were given opportunities to present arguments regarding the agreement between the State and Dixon. The trial court also ensured that a representative of the victim, ORMC, had an opportunity to address this situation. These facts indicate that, prior to the order of dismissal, the State received advance notice of this hearing and an opportunity to present arguments. Thus, we conclude that this first argument is without merit.

{¶30} Second, the State argues that the trial judge was biased based upon a conflict of interest. A criminal proceeding "before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 2002-Ohio-2128, ¶ 34. "A party may seek to disqualify a judge who is allegedly prejudiced and biased by filing an affidavit of disqualification with the Ohio Supreme Court in accordance with R.C. 2701.03." *King v. Divoky*, 2021-Ohio-1712, ¶ 44 (9th Dist.).

{¶31} However, "an affidavit of disqualification is not the sole method available to raise a claim of judicial bias" as "a biased judge denies a defendant the due process of law." *State v. Loudermilk*, 2017-Ohio-7378, ¶ 18 (1st Dist.), citing *In re Disqualification of Zmuda*, 2017-Ohio-317, ¶ 11. Accordingly, appellate courts "ha[ve] the authority to review a claim of judicial bias as it impacts the outcome of the case." *Loudermilk* at ¶ 18.

**{¶32}** In this analysis, "[t]rial judges are presumed to be fair, impartial and unbiased." *In re A.H.*, 2019-Ohio-4063, ¶ 65 (8th Dist.). For this reason, "the appearance of bias or prejudice must be compelling to overcome these presumptions." *Matter of C.S.*, 2023-Ohio-3754, ¶ 24 (4th Dist.), quoting *In re Disqualification of George*, 2003-Ohio-5489, ¶ 5.

> Judicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'

*Loudermilk* at ¶ 21, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, (1956), paragraph four of the syllabus.

**{¶33}** Where a party did not object to the alleged "display[] [of judicial] bias," we "review for plain error only." *State v. Rossiter*, 2023-Ohio-4809, ¶ 48 (4th Dist.), quoting *State v. West*, 2022-Ohio-1556, ¶ 28. *See also State v. Bond*, 2022-Ohio-4150, ¶ 17.

> For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. * * * Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise.

(Citations omitted.) *State v. Bradshaw*, 2023-Ohio-1244, ¶ 67 (3d Dist.). Plain error is recognized "with the utmost caution, under exceptional circumstances and

only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶34}** In this case, the trial judge indicated to the parties that he was friends with a person who was an owner of ORMC. The State raised no objection in response. Accordingly, we will review this argument for plain error only. As an initial matter, we note that, in considering a motion for disqualification, the Chief Justice of the Ohio Supreme Court held that the "mere existence of a friendship between a judge and an attorney or between a judge and a party will not disqualify the judge from cases involving that attorney or party." *In re Disqualification of Burt*, 2013-Ohio-5898, ¶ 4, quoting *In re Disqualification of Bressler*, 81 Ohio St.3d 1215, 1215 (1997).

**{¶35}** Turning to the record, we note that, when the trial judge disclosed that he knew an owner of ORMC, the prosecutor indicated that she did not see any issues with the trial judge continuing with this case. *See also In re Disqualification of Heiser*, 2021-Ohio-628, ¶ 12 ("Judges are presumed to be capable of distinguishing their personal lives from their professional obligations."), quoting *In re Disqualification of Lynch*, 2012-Ohio-6305, ¶ 10. The facts in the record lead us to the same conclusion that was reached by the prosecutor at the hearing on dismissal. Having examined the record, we conclude that the State "has failed to cite compelling evidence that the trial judge was biased or that there was an unconstitutional 'potential for bias' that seriously affected the fairness, integrity, or

public reputation of the sentencing hearing." *State v. Haudenschild*, 2024-Ohio-407, ¶ 25 (5th Dist.). Thus, this second argument is without merit.

**{¶36}** Third, the State argues that the trial court's decision interferes with ORMC's right "to full and timely restitution" under Article I, § 10a(A)(7) of the Ohio Constitution. Also known as "Marsy's Law," the provisions contained in this constitutional amendment "supersede all conflicting state laws." Ohio Const., Art. I, § 10a(E). However, the Ohio Supreme Court has concluded that "no portion of Marsy's Law 'conflicts' with the restitution statutes such that they are 'supersede[d]' * * *." (Bracket sic.) *State v. Yerkey*, 2022-Ohio-4298, ¶ 12.

**{¶37}** The restitution statute for misdemeanor offenses is contained alongside the financial sanctions listed in R.C. 2929.28. As a criminal penalty, this potential remedy for a victim's injury is not available until a defendant has been convicted of an offense. In examining the cases that have interpreted Ohio Const., Art. I, § 10a(A)(7), we have not found a situation in which a victim's right to restitution was asserted *before* a conviction was secured by a criminal prosecution. *See City of Centerville v. Knab*, 2020-Ohio-5219, ¶ 8-10; *State v. Fisk*, 2022-Ohio-4435, ¶ 2, 4; *Cleveland v. Rudolph*, 2022-Ohio-2363, ¶ 1, 3 (8th Dist.); *State v. Scott*, 2024-Ohio-2274, ¶ 10, 12 (10th Dist.); *State v. Zampini-Solarek*, 2024-Ohio-1532, ¶ 2, 9 (11th Dist.); *State ex rel. Howery v. Powers*, 2020-Ohio-2767, ¶ 1-2 (12th Dist.).

**{¶38}** For a number of reasons, a criminal prosecution can terminate without a conviction: a trial court can grant a motion to suppress; a defendant's speedy-trial time can expire; there can be a failure of proof at trial. In these situations, the State cannot invoke a victim's right to restitution as a means to continue a criminal prosecution that must otherwise fail.

**{¶39}** In the case presently before us, the State resolved this case through an agreement with Dixon. Since this agreement required the State to dismiss the case against Dixon, this prosecution terminated without a conviction. For this reason, no right exists to a "remedy" that is not available until after a conviction is secured. *State v. Brasher*, 2022-Ohio-4703, ¶ 27 (finding that, while the victims had a right to restitution, this "remedy" was not available where this right was "not invoked at the defendant's trial or raised on direct appeal" and that the victims, therefore, had to "turn to the civil-justice system * * * in order to be made whole"). *See also* R.C. 2929.28(H). Thus, we conclude that this third argument is without merit.

**{¶40}** In summary, the trial court dismissed the charges to ensure that Dixon received what the State had promised in a binding agreement. *See Warren*, 8 F.4th 444, at 448 (holding that "a defendant has a due process right to hold the government to the promises it made that induced him"). For this reason, we conclude that the trial court did not abuse its discretion in so acting. Accordingly, the second assignment of error is overruled.

*Conclusion*

**{¶41}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Logan County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

**/hls**